**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1)  **The Thomas L. Pearson and The Pearson Family Members Foundation,** | |
| **Plaintiff,** | Case No.:  **18-cv-99-GKF-FHM** |
| **v.** | |
| 1)  **The University of Chicago,** | |
| **Defendant.** | |

**COMPLAINT**

The Thomas L. Pearson and The Pearson Family Members Foundation, for its complaint against The University of Chicago, states the following:

**NATURE OF THE CASE**

1.      Plaintiff, The Thomas L. Pearson and The Pearson Family Members Foundation (the "Foundation"), made a $100 million conditional grant in 2015 to The University of Chicago ("U of C") to create The Pearson Institute for the Study and Resolution of Global Conflicts ("TPI") and The Pearson Global Forum ("TPGF").  The Foundation's principal officers, brothers Thomas L. Pearson ("Tom") and Timothy R. Pearson ("Tim"), directed the Foundation to make this grant to honor their family, and particularly their mother and father who had spent much of their lives engaged in peace and social justice efforts among other causes.

2.      The U of C and the Foundation agreed, consistent with the Pearson's stated desire to utilize their philanthropic efforts to make a meaningful difference in the world during their lifetimes and beyond, that TPI and TPGF could and would be world class, impactful additions to the public

policy and academic communities, dedicated to furthering the study and applied science of global conflicts resolution, and advancing the cause of world peace.

3.      But as soon as the Foundation executed the Grant Agreement, dated April 2, 2015, by and between the Foundation, Thomas L. Pearson (in his individual capacity for certain limited purposes), and the U of C (the "Grant Agreement", attached hereto as Exhibit A), the U of C – literally from the initial planning of U of C's public announcement of the Foundation's grant forward – repeatedly and in various ways breached its obligations under the Grant Agreement to the Foundation.

4.      The U of C failed to deliver on the most fundamental of its obligations under the Grant Agreement. For example, the U of C failed to appoint an Institute Director to run the day-to-day operations for TPI and TPGF; failed to create and/or develop an original academic curriculum; failed to fill chaired faculty positions with preeminent individuals; failed to apply objective standards to the selection of individuals for scholarships; failed to provide an acceptable operating plan and budget; and has already communicated to the Foundation that it will fail to hold the first annual TPGF, all as required under the Grant Agreement.

5.      Rather than address these breaches with forthrightness and transparency, the U of C has repeatedly sought to avoid and deceive the Foundation regarding these and other failures.  The U of C has failed to deal with the Foundation honestly and in good faith.

6.      As a result of having breached its obligations and having engaged in deliberate misrepresentations over a period of more than two years, the U of C has caused the Foundation to lose all confidence that the U of C is an appropriate or capable steward of the Pearson Family legacy.  The Foundation brings this action for the return of the $22.9 million (representing

payments of $11.0 million in 2015, $11.0 million in 2016 and $900,000 in 2018) that the Foundation has thus far paid to the U of C.

## PARTIES

7.      The Foundation is a Delaware nonstock corporation with its principal place of business in Tulsa, Oklahoma. It provides charitable gifts and grants to select organizations.

8.      The U of C is an Illinois not-for-profit corporation with its principal place of business in Chicago, Illinois.

## JURISDICTION, VENUE AND GOVERNING LAW

9.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff and Defendant are citizens of different states.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     As stated in the Grant Agreement, the parties have agreed that the United States District Court in the Northern District of Oklahoma is the exclusive venue for any litigation, special proceeding or other proceeding.

11.     As provided for in the Grant Agreement, the parties agreed that the Grant Agreement is governed by and construed in accordance with the laws of the State of New York without regard to the conflicts of laws principles thereof.

## FACTUAL ALLEGATIONS

### CREATION OF THE GRANT AGREEMENT
### BETWEEN THE FOUNDATION AND THE U OF C

12.     In January 2014, the Foundation, through its officers Tom and Tim Pearson, approached the U of C to discuss the possibility of making a large grant to be used for the creation of an institute to study global conflicts resolution.  Proposing this idea to the U of C was the natural next step for the Pearsons as they had spent many years developing the global conflicts resolution

concept.   The Pearsons had been raised in rural Iowa as the sons of a well-known Methodist minister (their father) and a college professor (their mother), both of whom were deeply engaged in the Civil Rights Movement, nuclear disarmament and other important issues of their time.   As the culmination of both Tom's and Tim's successful business careers, they conceived TPI and TPGF as the capstones of their life-long commitment to philanthropy and as their most important effort to create something during their lifetimes that would be consequential, significant and for the public good.   The Pearson Family legacy was to be the creation, development and successful operation of TPI and TPGF.

13.     After their many separate and distinct experiences in the business world and before approaching the U of C, Tom and Tim had concluded that to create an organization that would advance the study and practice of global conflicts resolution in a meaningful and impactful way, TPI and TPGF would have to be of the highest quality, staffed with world class academics and professionals, and be able to convene world leaders in the study and resolution of global conflicts. In addition, the Pearsons had for years studied and considered how they wanted the Foundation to address the study of global conflicts resolution.   They had concluded that to be truly impactful, a new world-class initiative would have to focus on data-driven mathematical modeling, on-the-ground field work, empirical studies and randomized controlled trials in conflict and post-conflict settings. The Pearsons also had developed the conceptual framework of the TPGF to move beyond academic studies and to maximize actual public policy impact.

14.     The Pearsons had evaluated several leading universities as a potential home for TPI and TPGF, and decided on the U of C because of its representations that it is one of the world's great academic institutions, and as a learning environment that valued rigorous study driven by data and evidence.   Even with that, the Pearsons engaged in months of discussion with the U of C, and spent

weeks with the U of C negotiating the terms upon which the Foundation would make its grant.  At the conclusion of those negotiations, on April 3, 2015, the Foundation and the U of C executed the Grant Agreement.

15.     The Grant Agreement made clear that both the Foundation and the U of C intended that TPI, together with TPGF, would "be a global voice and leader in understanding violent conflict and contributing to its prevention or resolution", and that TPI and TPGF would "attract widespread positive awareness and interest from the public policy and academic communities and the international news media".  The mission of TPI was agreed to be:

> …[T]o promote ongoing discussion, understanding and resolution of global conflicts, and to contribute to the advancement of a global society at peace, including by:  (i) employing an analytically rigorous, data-driven approach and global perspective to understanding violent conflict and to contributing to its prevention and resolution; (ii) engaging students, scholars and policy makers through educational programs, including academic courses, with respect to issues related to global conflict resolution; (iii) promoting the application of [T]he Pearson Institute's research findings within the academic community and for the benefit of the general public, and utilizing [T]he Pearson [Global] Forum for this purpose; and (iv) bringing together students, scholars, policy makers and other interested parties from around the world to ensure the regular exchange of ideas and to maximize the potential for impact in preventing and resolving violent conflict and informing related policy (collectively, the **"Mission"**).

### THE U OF C'S SERIOUS AND PERSISTENT FAILURES

16.     Under the terms of the Grant Agreement, the U of C was obligated to perform certain tasks that were fundamental to the purpose of the Foundation's grant and to the establishment and operation of TPI and TPGF.  The U of C has failed to perform those obligations under the Grant Agreement in at least the following respects:

### Failure To Name Institute Director

17.     The U of C was obligated under the Grant Agreement to appoint an Institute Director for TPI by September 1, 2016.  The parties provided in the Grant Agreement that if an Institute

Director was not appointed by that date, the U of C would have a one-year cure period, until September 1, 2017, to cure this breach.

18.     Pursuant to the terms of the Grant Agreement, the Institute Director has a variety of reporting and other explicitly described responsibilities at TPI and was to have been the senior leadership and management executive, directing the day-to-day operations of TPI.

19.     The U of C has failed to appoint an Institute Director for TPI.

20.     In June 2016, the U of C appointed Professor James Robinson as "Faculty Director" for TPI.  The U of C's press release of June 2, 2016, announcing Professor Robinson's appointment, states that "Professor James A. Robinson, a prominent political scientist and economist… has been named to the newly created position of faculty director." (Ex. B).

21.     Faculty Director Robinson is not tasked with, and, by the U of C's own admission, is not suited for, the "day-to-day operations" and management role required of an Institute Director. Upon information and belief, Faculty Director Robinson's status as a U of C "University Professor" specifically exempts Faculty Director Robinson from administrative/management duties or obligations.

22.     Prior to the acceptance of Professor Robinson's appointment as the Faculty Director with specifically designated responsibilities and duties that were separate and distinct from those of the Institute Director, U of C representatives specifically advised the Pearsons that Professor Robinson did not have the skill set or interest to fulfill the administrative, management and fund-raising responsibilities, among others, required for the Institute Director position.

23.     On August 29 and 30, 2017, just prior to the expiration of the cure period on September 1, 2017, the U of C secretly altered the TPI web site, without notice to the Pearsons or the Foundation, to change Faculty Director Robinson's title to "Institute Director".

24.    The Grant Agreement requires the U of C to keep the Foundation informed regarding the appointment of an Institute Director.

25.    The U of C deliberately concealed from the Foundation and the Pearsons that it was retitling Faculty Director Robinson as "Institute Director".

26.    Changing the website surreptitiously to retitle Faculty Director Robinson as Institute Director is a false statement.  Faculty Director Robinson does not and cannot function as Institute Director.

27.    The 2016-2017 Annual Report for TPI, issued by the U of C on September 28, 2017, after the U of C's surreptitious changes to the TPI website, has a budget line item designated as "Search Costs" for an "Institute Director".  That Annual Report identifies Professor James Robinson as "Faculty Director", not "Institute Director".  The 2015-2016 Annual Report for TPI also identifies Professor Robinson as "Faculty Director", not "Institute Director".

### Failure To Hire Qualified Faculty

28.     The U of C was required under the Grant Agreement to fill a total of four chaired faculty positions created by the Foundation's grant, pursuant to the Grant Agreement.  The first chaired position is held by Professor Robinson.  The other three chaired positions are the Ramalee E. Pearson Professor of Global Conflict Studies; the Philip K. Pearson Professor of Global Conflict Studies; and the David L. Pearson Professor of Global Conflict Studies, named for Tom and Tim's mother and two younger brothers, respectively.

29.    It was understood between the parties that while chaired professorships at an elite institution such as the U of C would be more expensive to fund than ordinary tenured professor positions, and far more expensive than non-tenured professorships, funding chaired professorships was essential to attract the caliber of distinguished scholars with the profile and reputation desired

to establish TPI as a quickly emerging world class entity.  Requiring the hiring of four chaired professors was in furtherance of the overall objective of creating a world class faculty.

30.     Excluding Faculty Director Robinson's position, one of the three chaired professorships remains unfilled.  For the other two chaired positions, the U of C hired two junior, non-tenured professors from academic institutions that are ranked below the U of C in national academic standings.

31.     Elevating these two junior, non-tenured professors to chaired professorships at the U of C was contrary to reasonable and intended academic hiring criteria and standards, and required that the newly hired professors be skipped over several ranks in the ordinary course of academic advancement.

32.     Upon information and belief, both of these non-tenured professors were given their chaired professorships at TPI because both are protégés and former students of Faculty Director Robinson.

33.     The Grant Agreement requires the U of C to keep the Foundation informed regarding the recruitment of chaired professors.  These pre-existing relationships with Faculty Director Robinson were never disclosed by the U of C to the Foundation.

34.     By hiring these professors, the U of C deliberately failed to use the chaired professorships, as agreed by the parties, as a significant resource to be used to help establish and advance the reputation and standing of TPI.

### The U Of C Has Admitted It Will Not
### Hold The Pearson Global Forum As Required

35.     TPGF was created under the terms of the Grant Agreement to bring together leading scholars and policy makers from around the world for the regular exchange of ideas and to maximize the impact of the research funded and undertaken by TPI.

36.     The U of C is obligated pursuant to the Grant Agreement to hold the first annual TPGF by October 31, 2018.  If it fails to meet that deadline, the Grant Agreement allows the U of C a cure period until October 31, 2020.

37.     The U of C first stated in March 2017 that it would not be able to hold the TPGF by October 31, 2018.  It had not planned or done the necessary preparatory work to hold the TPGF by that date.  Rather than develop the TPGF as required by the Grant Agreement, the U of C has stated its intention to meet its obligation to hold the TPGF by involving TPI in the 2018 Irish Catholic Bishops World Meeting of Families Congress (the "Bishops Congress"), which "promotes the pastoral care of families, protects their rights and dignity in the church and in civil society, so that they may ever be able to fill their duties".

38.     Participation in a conference that has its own agenda and purpose, and is organized by another organization, is inconsistent with the U of C's obligation to have TPI convene the TPGI, as required by the Grant Agreement.

39.     Using the Foundation's grant to plan for TPI's participation in the Bishops Congress is not a proper and agreed upon use of the Foundation's grant, nor does it, or will it, satisfy the U of C's obligation with regard to convening the TPGF.

### The U Of C Failed To Deliver The Operating Plan And Budget For The Pearson Institute As Required, And Threatened the Operating Viability of TPI and TPGF

40.     The U of C was obligated pursuant to the Grant Agreement to produce and deliver to the Pearsons by March 31, 2017, the first definitive Operating Plan and Budget for TPI.

41.     The U of C delivered a document to the Foundation on March 31, 2017, purporting to be the required Operating Plan and Budget.  It was replete with material errors and did not meet intended standards of quality or professionalism, nor was it fit for its intended use.  The U of C

made at least one unsuccessful attempt to revise this document, redelivering a revised and unacceptable new submission after March 31, 2017.

42.     In addition to failing to produce the required Operating Plan and Budget, the U of C used a footnote in its budget submission of March 31, 2017, to advise the Pearsons and the Foundation for the first time that the University believed that it had the right to charge to TPI many millions of dollars of operating expenses of the Harris School of Public Policy Studies at the U of C (the "Harris School"). The U of C had determined at the outset, in 2015, that TPI and TPGF would be a part of the Harris School.

43.     By advising the Pearsons and the Foundation of these potential charges against the TPI budget, the U of C was advising that the TPI budget might have to absorb an increase in expenses of approximately 50%. An increase of this magnitude would, in effect, either cause the shutdown of TPI and TPGF, or require that the Pearsons and the Foundation infuse TPI with enormous additional contributions of cash if the Pearsons wanted to preserve and protect their investment to date in TPI and maintain the conceptual and operating viability of both TPI and TPGF.

44.     The U of C made this disclosure only after the Foundation had funded $22 million under the terms of the Grant Agreement. The Pearsons would not have agreed to the Grant Agreement, and would not have funded $22 million, if the University had disclosed its intent to reserve to itself the possibility of charging these enormous additional Harris School expenses to TPI.

### The U Of C Breached Its Obligation To Award Scholarships As Required

45.     The U of C was obligated under the Grant Agreement to administer the awards of Pearson Fellow and Pearson Scholar scholarships.  These scholarships were intended to have been awarded pursuant to a discernable standard that would recognize exceptionally accomplished graduate level students who had shown commitment to the study of conflict resolution.

46.     Upon information and belief, rather than awarding scholarships to the best and brightest as intended, these scholarships were awarded by the U of C without discernable, objective standard(s) applied.

47.     The Grant Agreement requires the U of C to award a specified number of Pearson Fellow and Pearson Scholar scholarships each year.  Without informing or consulting with the Foundation, the U of C unilaterally altered the number of Pearson scholarships it awards annually.  The Grant Agreement bars the U of C's unilateral alteration of these obligations.

### The U Of C Has Failed To Develop The Academic Curriculum For The Pearson Institute As Required

48.     The U of C was obligated pursuant to the terms of the Grant Agreement to "create" and "develop" an academic curriculum for TPI relating to the study of global conflicts resolution.  The U of C has failed to meet this obligation.

49.     Rather than use the Foundation's grant to create and develop a curriculum that would constitute TPI's own work product, the U of C has substantially relied on course materials already developed at other institutions or taught previously at the U of C, and course work with little or no connection to the mission of TPI.

50.     In this way, the U of C has failed to advance, as it agreed it would, the reputation of TPI as a leading academic and research center, developing original thinking and scholarship.

### The U Of C Has Failed To Provide Promised Leadership For TPI From Within The U Of C's Senior Management

51.     From almost the beginning of the Pearsons' communications and discussions with the U of C regarding the possibility of the Foundation's grant and the creation of TPI, their primary point of contact was the Dean of the Harris School, as reflected in the Grant Agreement.

53.     On or about September 1, 2014, Professor Daniel Diermeier of Northwestern University of

Chicago, Illinois, was hired from Northwestern by the U of C and named the Dean of the Harris School.  At the request of the President of U of C, however, Dean Diermeier was not immediately involved in the substantive early discussion about the creation of TPI until late October or early November 2014. However, once involved, Dean Diermeier co-lead the negotiations on behalf of U of C.

54.     In March 2016, only six months after the announcement of the $100 million grant, the U of C announced that Dean Diermeier would be changing jobs at the U of C, and that, effective July 1, 2016, he would no longer be the Dean of the Harris School and would assume the position of Provost of the University.

55.     The U of C advised the Pearsons that the Dean's position at the Harris School would be filled on an interim or temporary basis by a faculty member of the Harris School.  The Pearsons expressed the Foundation's strong viewpoint that it was unacceptable for an interim or temporary appointee as the Interim Dean of the Harris School to serve as the primary contact for communications with and management of the U of C's responsibilities and obligations under the Grant Agreement.

56.     In response, subject to reducing such understanding to writing in a new amended and restated Grant Agreement, the U of C and the Pearsons agreed that Dean Diermeier, as he transitioned into the Provost position, would see through his commitment to TPI and would retain primary responsibility for communications and sole management responsibility on behalf of the U of C for the operation and welfare of TPI, and for the proper stewardship of the Foundation's grant.

57.     Subsequently, the Pearsons requested repeatedly that the Grant Agreement be amended and restated in its entirety to reflect this agreement and understanding between the parties that Provost Diermeier would remain the individual primarily responsible for all communications by the U of

C and would continue to be the sole U of C management individual accountable for the Foundation's grant and TPI. The U of C and the Pearsons agreed that, during the period of his service as the Provost and until such time as the U of C and the Pearsons mutually agreed otherwise, Provost Diermeier would retain solely these responsibilities.

58.    The University has refused to provide the Foundation with information required to make certain modifications to the Grant Agreement and has failed to amend and restate the Grant Agreement to reflect the oral agreement and understanding between the parties regarding Provost Diermeier's continuing role and responsibilities with regard to TPI and the Foundation's grant.

59.    Provost Diermeier has refused and failed to adequately discharge his responsibilities for the proper administration and management of TPI and the stewardship of the Foundation's grant.

### The U Of C Has Breached A Variety Of Additional Contract Obligations

60.    The U of C was obligated under the terms of the Grant Agreement to have filled the fourth faculty chair position by September 1, 2017.

61.    The U of C has failed to fill the fourth faculty chair position. In addition, the U of C has failed to keep the Foundation informed of its efforts with regard to recruitment and hiring activities relating to the fourth faculty chair position.

62.    The U of C was obligated to provide to the Foundation annual reports that include information agreed upon by the parties.

63.    The U of C has failed to provide the required annual reports to the Foundation.

64.    The U of C was obligated under the terms of the Grant Agreement to hire a Grants Administrator by June 30, 2016.

65.    The U of C has failed to hire a Grants Administrator.

66.    The U of C was obligated under the terms of the Grant Agreement to develop strategies for

additional fundraising by June 30, 2017.

67.    The U of C has failed to develop strategies for additional fundraising.

68.    The U of C was obligated under the terms of the Grant Agreement to have the Institute Director and the Dean of the Harris School meet at least semi-annually with the Pearson Family.

69.    The U of C has failed to have the Dean of the Harris School meet with the Pearson Family semi-annually. There is no Institute Director at TPI.

70.     The U of C is obligated under the terms of the Grant Agreement to keep the Pearson Family apprised of, and extend invitations to the Pearson Family for, events and activities at TPI.

71.    Upon information and belief, TPI held at least twenty-four events in school year 2016-17 and it failed to apprise the Pearson Family of, or invite them to, at least twenty-two of such events. Additionally, the Pearson Family has received only one invitation to a TPI event in school year 2017–18 (without correct or sufficient information provided by the U of C to be able to adequately make plans to attend this event), although there have been numerous events posted on the TPI web site.

72.    The U of C is obligated under the terms of the Grant Agreement to report to the Foundation, within 30 days of discovery, any failure or breach of certain specified material obligations under the Grant Agreement.

73.    The U of C has had knowledge of its failure or breach of certain of those specified obligations and has refused and failed to report, at any time, any such failure or breach to the Foundation.

74.    The U of C was obligated under the terms of the Grant Agreement to launch a web site by September 1, 2016, dedicated solely to TPI.

75.    The U of C failed to launch a TPI website by September 1, 2016.  As the result of this

breach, the Foundation undertook leadership of this project in the absence of a timely effort by the U of C to meet this obligation.  A TPI website was launched in the Spring of 2017.

76.     The U of C was obligated under the terms of the Grant Agreement to create by June 2016 a visual identity and branding plan for TPI and TPGF.

77.     The U of C failed to create a visual identity and branding plan for TPI, as required. As the result of this breach, the Foundation undertook leadership of this project in the absence of a timely effort by the U of C to meet this obligation.  An award-winning visual identity and branding plan for TPI and TPGF was completed in August 2016.

**IN ADDITION TO FAILING TO PERFORM EXPRESS TERMS OF THE GRANT AGREEMENT, THE U OF C HAS FAILED TO ACT IN GOOD FAITH**

78.     The U of C failed to address its performance failures with candor, or to interact with the Foundation in a forthright and honest manner.  The early performance issues and deliberate misrepresentations described above and below were acts by the U of C showing a consistent and on-going lack of good faith toward the Foundation from the onset.

79.     Shortly before the Grant Agreement deadline of June 30, 2017, the U of C appointed two individuals employed by the U of C as members of the TPI Advisory Council, which was to provide advice to the Dean of the Harris School and to the Institute Director regarding TPI and TPGF.  In addition, the Advisory Council was to provide advocacy and philanthropic support for TPI and TPGF.

80.     Neither of the two individuals appointed by the U of C have the expertise or knowledge to provide advocacy for TPI and TPGF, and neither individual has provided philanthropic support for TPI and TPGF.

81.     These appointments were made by the U of C solely for the purpose of attempting to avoid the occurrence of a default on June 30, 2017.

82.     In now reserving to itself the right to charge many millions of dollars of Harris School expenses to TPI, the U of C invalidated and made useless the original, "good faith" budget that the U of C had provided the Pearsons in 2015 as a part of the Grant Agreement negotiations prior to execution, and that was made a part of the Grant Agreement as an exhibit thereto.

## COUNT I

### (Breach of Contract)

83.     The Foundation restates and incorporates by reference the allegations of Paragraphs 1 – 82 as though fully set forth herein.

84.     The Grant Agreement is a valid and enforceable contract between the Foundation and the U of C.

85.     The Foundation has performed all of the obligations required of it under the Grant Agreement.

86.     As set forth above, the U of C has materially breached the Grant Agreement through its serious and repeated failures to perform its obligations thereunder.

87.     As a direct and proximate result of the U of C's material breaches of the Grant Agreement, the Foundation has been injured. The Foundation agreed to grant substantial sums of money to the U of C for TPI and TPGF on the condition that it would be used to fulfill the Foundation's objectives under the Grant Agreement. The U of C has not performed as promised under the Grant Agreement.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against the U of C, and asks that this Court order the U of C to return all amounts paid pursuant to the Grant Agreement; attorney's fees, expenses and costs; and such other relief as this Court may deem just and proper and to which the Foundation may be entitled as a matter of law.

## COUNT II

### (Breach of Fiduciary Duty)

88.     The Foundation restates and incorporates by reference the allegations of Paragraphs 1 – 87 as though fully set forth herein.

89.     By establishing TPI and TPGF, and undertaking the commitment to administer the funds in accordance with the terms of the Grant Agreement, including that TPI and TPGF would have "the highest level of success and recognition", the U of C undertook a position of trust and a corresponding fiduciary duty to the Foundation to achieve the objectives of the grant.

90.     The U of C violated its position of trust and fiduciary responsibility by, among other things, failing to perform its obligations under the Grant Agreement, failing to address these performance failures with candor, misrepresenting its activities to the Foundation, and failing to interact with the Foundation in a forthright, honest, and transparent manner.

91.     The U of C has acted in its own interest in blatant disregard of the Foundation's interests as detailed and agreed to in the Grant Agreement.

92.     The U of C has failed to honor and carry out the stated objectives of the Foundation as set forth in the Grant Agreement.

93.     Accordingly, the U of C has failed to implement the purpose of the grant in good faith and with the care, loyalty, and obedience an ordinarily prudent person in a like position would exercise under similar circumstances.

94.     The violations of the U of C's fiduciary responsibilities to the Foundation preclude the U of C from continuing as an appropriate or capable custodian of TPI and TPGF.

95.     The Foundation has been directly damaged by the U of C's misconduct.

        WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against the U of C, and asks that this Court order the U of C to return all amounts paid pursuant to the Grant

Agreement; attorney's fees, expenses and costs; and such other relief as this Court may deem just and proper and to which the Foundation may be entitled as a matter of law.

## COUNT III

### (Fraudulent Concealment)

96.    The Foundation restates and incorporates by reference the allegations of Paragraphs 1 – 95 as though fully set forth herein.

97.    On August 29 and 30, 2017, the U of C made a material false statement by retitling Faculty Director Robinson as Institute Director on the TPI website.

98.    The U of C knew on August 29 and 30, 2017 that Faculty Director Robinson was not the Institute Director of TPI.

99.    On information and belief, as of August 29 and 30, 2017, and through the present, Faculty Director Robinson's roles and responsibilities as Faculty Director have remained unchanged.

100.    The U of C retitled Professor Robinson as Institute Director on the TPI website secretly and without communicating or disclosing to the Foundation that this change would be made.

101.    The U of C has a duty to keep the Foundation informed of its progress in recruiting the initial and any subsequent Institute Director.  The information previously provided by the U of C to the Foundation regarding Professor Robinson was that Professor Robinson had no interest in and was not suited or qualified to serve as Institute Director. The Pearsons and the Foundation relied upon that information and those representations from the U of C.

102.    The U of C has a duty to promptly notify the Foundation of any proposed changes to the TPI website in regard to written representations (for example, press releases or press statements that had been previously approved by the Pearsons relating to TPI or TPGF) that are inconsistent or at odds with media or public documents previously submitted to and specifically approved by the Pearsons and/or the Foundation prior to their release to the public.

103.    The Foundation was not provided an opportunity to object to this material false statement by the U of C and relied on the U of C's obligation to keep the Foundation informed of any progress on hiring an Institute Director.

104.    Because of the U of C's omission and failure to inform the Foundation of this change, the Foundation did not discover this wrongful act until months after the fact.

105.    On information and belief, U of C senior representatives are aware of Professor Robinson's inability and/or lack of desire to perform the roles and responsibilities of Institute Director.

106.    The retitling of Professor Robinson as "Institute Director" will require correction and will cause public confusion and a greatly diminished reputation for TPI and TPGF.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against the U of C, and asks that this Court order the U of C to return all amounts paid pursuant to the Grant Agreement; attorney's fees, expenses and costs; and such other relief as this Court may deem just and proper and to which the Foundation may be entitled as a matter of law.

## COUNT IV

### (Breach of Duty of Good Faith and Fair Dealing)

107.    The Foundation restates and incorporates by reference the allegations of Paragraph 1 – 106 as though fully set forth herein.

108.    The U of C owed the Foundation a duty to act in good faith and to engage in fair dealing with the Foundation in implementing and executing the objectives of the Grant Agreement.

109.    The U of C has breached the duty of good faith and fair dealing by failing to deal with the Foundation with honesty, forthrightness, and transparency, by engaging in deliberate misrepresentations to the Foundation over a period of more than two years, and by failing to discharge its obligations with the care an ordinarily prudent person in a like position would

exercise under similar circumstances.

110.    The Foundation has been directly damaged by the U of C's breach of the duty to act in good faith and to engage in fair dealing.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against the U of C, and asks that this Court order the U of C to return all amounts paid pursuant to the Grant Agreement; attorney's fees, expenses and costs; and such other relief as this Court may deem just and proper and to which the Foundation may be entitled as a matter of law.

**COUNT V**

**(Anticipatory Repudiation)**

111.    The Foundation restates and incorporates by reference the allegations of Paragraphs 1 – 110 as though fully set forth herein.

112.    Under the terms of the Grant Agreement, the U of C is required to hold TPGF by October 31, 2018.

113.    The U of C has informed the Foundation that it has not done, and will not do, the necessary preparatory work to hold TPGF by October 31, 2018.

114.    The U of C has stated to the Foundation its intention to involve TPI in the Bishops Congress, a conference with its own agenda and purpose, in discharge of its obligation to hold TPGF.  TPI's participation, if it occurs, in the Bishops Congress does not satisfy the obligation to hold TPGF according to the terms of the Grant Agreement.

115.     The U of C's acknowledged failure to engage in its own planning and preparation for TPGF, and its stated intention to participate in the Bishop's Congress instead of fulfilling its obligation to convene TPGF, are positive and unequivocal expressions of the U of C's intent to not perform as required under the Grant Agreement.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against the U of C, and asks that this Court order the U of C to return all amounts paid pursuant to the Grant Agreement; attorney's fees, expenses and costs; and such other relief as this Court may deem just and proper and to which the Foundation may be entitled as a matter of law.

Dated: February 20th, 2018

**JURY TRIAL DEMANDED**

Respectfully submitted,

_/s/ P. Scott Hathaway_
P. Scott Hathaway, OBA # 13695
Isaac R. Ellis, OBA # 30072
4000 One Williams Center
Tulsa, OK  74172-0148
Telephone:  918-586-8510 P. Scott Hathaway
Facsimile:  918-586-8610 P. Scott Hathaway
Telephone:  918-586-8996 Isaac Ellis
Facsimile:  918-586-8322 Isaac Ellis
Email:         shathaway@cwlaw.com
                  iellis@cwlaw.com
**THE THOMAS L. PEARSON AND THE
PEARSON FAMILY MEMBERS FOUNDATION**