IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE THOMAS L. PEARSON AND THE PEARSON FAMILY MEMBERS FOUNDATION, <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> THE UNIVERSITY OF CHICAGO, <br><br> Defendant and Counterclaimant. <br><br> AND <br><br> THE UNIVERSITY OF CHICAGO, <br><br> Counterclaimant and Defendant, <br><br> v. <br><br> THE THOMAS L. PEARSON AND THE PEARSON FAMILY MEMBERS FOUNDATION, <br><br> Counterclaim Defendant and Plaintiff, <br><br> THOMAS L. PEARSON, <br><br> Counterclaim Defendant. | No. 18-cv-99-GKF-FHM |

**THE UNIVERSITY OF CHICAGO'S SUPPLEMENTAL REPLY IN
<u>OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL</u>**

I.  **The Foundation Has Failed to Identify Any Grant Agreement Provision That Supports Discovery of the University's Faculty-Hiring Process**

At the March 13, 2019 hearing, the Court directed the Foundation to identify "what portions of the [G]rant [Agreement]" it contends would entitle it to discovery of the University's faculty-hiring process. Dkt. No. 72, Tr. at 67:16-18. The Foundation's supplemental brief, however, fails to identify any Grant Agreement provision that could entitle it to such discovery. The sole Grant Agreement provision the Foundation mentions—§ 3.8, which is referenced only in a footnote—does not relate to faculty hiring, but instead addresses the obligations of the Institute Director and Forum Director. *See* Foundation Suppl. Br. at 6 n.4; Dkt. No. 57-4, Grant Agreement, § 3.8.

The Grant Agreement provision that does address faculty hiring, § 3.5(b), expressly precludes the Foundation and the Pearsons from "any role or authority" concerning faculty hiring. Dkt. No. 57-4, Grant Agreement § 3.5(b). The University insisted on this provision because the faculty-hiring process is at the core of the University's academic mission. The integrity of the process depends upon candid, confidential faculty feedback. This contractual exclusion that the Foundation agreed to was designed to protect the faculty-hiring process from the kind of intrusion the Foundation now demands. Emails reflecting high aspirations for the Pearson Institute, including that it would become "world class," do not somehow overcome the Foundation's contractual agreement that it would have no role or authority in the appointment of faculty.

Protecting the University's faculty-hiring process from intrusion does not mean, as the Foundation contends, that the University "could essentially hire any individual off the street." Dkt. No. 72, Mar. 13, 2019 Hrg. Tr. at 9:5-7. As discussed below, the Foundation can pursue its

allegations challenging faculty qualifications through discovery of, and argument about, those qualifications, without invading the University's faculty-hiring process.[1]

The University does not seek "some sort of new privilege for the academic hiring process." Foundation Suppl. Br. at 9. The University instead relies on the well-established heightened relevancy standard for the production of sensitive personnel information. *Westport Ins. Corp. v. Hippo Fleming & Pertile Law Offices*, 319 F.R.D. 214, 218 (W.D. Pa. 2017) ("Because there is a strong public policy against disclosure of personnel information, such requests are subject to a heightened relevancy standard."); *see also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th Cir. 2008) (Courts should "be cautious" about ordering production of personnel files). Especially in light of § 3.5(b) of the Grant Agreement and the implications for academic freedom at issue, the Foundation fails to meet that standard.

## II. The Foundation's Claims Do Not Require Production of Sensitive Information About the University's Faculty-Hiring Process

The Foundation's complaint alleges three grounds for its challenge to the qualifications of Professors Dube and Blattman: (1) they were "junior, non-tenured professors," (2) they are from institutions—Columbia and New York University—"that are ranked below the U of C in national academic standings," and (3) they are "protégés" of Pearson Institute Director James Robinson. Dkt. No. 2, Compl. ¶¶ 28-34.

The Foundation can continue to pursue discovery of these allegations as to the qualifications and credentials of the challenged faculty, the academic rankings of their prior

---

[1] The Foundation asserts that the University's production of the Shils Report, which describes faculty hiring standards, somehow compels it to produce confidential, sensitive faculty-hiring materials. The Foundation does not mention that when the University produced the Shils Report, which is publicly available and arguably responsive to the Foundation's broad faculty-hiring requests, the University maintained its objection to producing confidential, sensitive faculty-hiring materials. The Foundation's bootstrap argument is baseless.

institutions, and their supposed prior relationships with Professor Robinson. None of these allegations depend on, require, or justify discovery into the University's internal faculty-hiring process.

The Foundation implicitly acknowledges that its contract claim does not justify the discovery it seeks as it now attempts to rely on a new articulation of its good faith and fair dealing claim. This does not change the conclusion. The Foundation's complaint makes clear that its faculty-hiring allegations are part of the Foundation's breach of contract claim. Dkt. No. 2, Compl. ¶¶ 16, 28-34 (listing the "Failure to Hire Qualified Faculty" as an example of how the University allegedly "failed to perform [its] obligations under the Grant Agreement").[2] The Foundation saved its good faith and fair dealing claim from dismissal by arguing that the claim is based on different allegations than those underlying its breach of contract claims, including its faculty-hiring claim. *See* Dkt. No. 35, Foundation's Resp. to Univ.'s Mot. to Dismiss at 22-23 (arguing that its "breach of contract claim and breach of implied covenant claim have different factual bases and thus neither can be dismissed as duplicative"); Dkt. No. 46, Opinion and Order at 25 (denying the motion because the claim is "based on allegations different from those underlying the accompanying breach of contract claim") (citations omitted). Having saved the good faith and fair dealing claim by its contention that the claim is not based on the faculty hiring and other contract allegations, the Foundation is judicially estopped from now arguing that the claim is based on the faculty-hiring allegations. *See In re Kreutzer*, 344 B.R. 634, 646 (N.D. Okla. 2006) ("When a party successfully maintains a position in a legal proceeding, he may not

---

[2] *See also* Dkt. No. 2, Compl. at 15 (distinguishing the Foundation's good faith and fair dealing allegations from the preceding sections, which allege breach of the "express terms of the grant agreement" and include the faculty-hiring allegations).

later assume a contrary position, simply because his interests have changed . . . ."), *aff'd*, 249 F. App'x 727 (10th Cir. 2007).

The new good faith and fair dealing theory fails for the additional reason that it would effectively contravene Grant Agreement § 3.5(b), which excludes the Foundation from a role in faculty appointments. *See Houlahan v. Raptor Trading Sys., Inc.*, No. 16 CIV. 9620 (PGG), 2018 WL 3231662, at *5 (S.D.N.Y. Feb. 12, 2018) ("[N]o obligation can be implied that would be inconsistent with others terms of the contractual relationship.") (citations omitted).[3]

The Foundation's offer to accept redaction of names in internal hiring materials "while leaving in place other identifying information" would not protect the integrity of the faculty-hiring process. Foundation Suppl. Br. at 9. That other identifying information would breach the confidentiality of the process and threaten the candor upon which it depends. The Foundation makes clear that it would likely seek further review of information down the road, including depositions of those involved in the confidential review and evaluation process.

## Conclusion

For the reasons stated in its supplemental and opposition briefs, at the March 13 hearing, and above, the University respectfully requests that the Court deny the Foundation's motion to compel discovery concerning the University's evaluation of candidates for the Pearson Institute Chairs.

---

[3] The Foundation argues that it should be allowed discovery to determine whether the University adhered to its hiring process. Foundation Suppl. Br. at 2. This argument is without merit. There is nothing in the Grant Agreement that requires the University to follow particular hiring procedures for the Pearson Institute faculty positions. Allowing the Foundation to second-guess the University's hiring process—under the guise of a good faith and fair dealing claim—would provide the Foundation with "authority" over that process, contrary to § 3.5(b) of the Grant Agreement. Notably, the Foundation's complaint does not allege that the University promised to use any particular hiring procedures in filling the Pearson Institute chair positions.

| | |
|---|---|
| Dated: April 22, 2019 | Respectfully submitted, |
| | /s/ Jeffrey A. Hall |

William S. Leach, OBA#14892
Jessica L. Dickerson, OBA#21500
McAfee & Taft, a Professional Corporation
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone: (918) 587-0000
Facsimile: (918) 599-9317
Email:  bill.leach@mcafeetaft.com
　　　　jessica.dickerson@mcafeetaft.com

Jeffrey A. Hall
Rebecca Weinstein Bacon
Faye E. Paul
Taylor A.R. Meehan
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, Illinois 60654
t: (312) 494-4400
f: (312) 494-4440
jeffrey.hall@bartlit-beck.com
rweinstein.bacon@bartlit-beck.com
faye.paul@bartlit-beck.com
taylor.meehan@bartlit-beck.com

Andrew C. Baak
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
t: (303) 592-3100
f: (303) 592-3140
andrew.baak@bartlit-beck.com

*Counsel for Defendant and Counterclaimant, The University of Chicago*

5

## CERTIFICATE OF SERVICE

   I hereby certify that on this 22nd day of April, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registrants:

P. Scott Hathaway
Isaac R. Ellis
4000 One Williams Center
Tulsa, Oklahoma 74172
Attorneys for Plaintiffs

                     /s/ Jeffrey A. Hall
                     Jeffrey A. Hall