IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| The Thomas L. Pearson and <br> The Pearson Family Members Foundation, <br><br>      **Plaintiff and Counterclaim Defendant,** <br><br> v. <br><br> The University of Chicago, <br><br>      **Defendant and Counterclaimant,** <br><br> v. <br><br> Thomas L. Pearson, <br><br>      **Counterclaim Defendant.** | Case No.: 18-CV-99-GKF-FHM |

**PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY FROM THE UNIVERSITY OF CHICAGO**

Plaintiff, The Thomas L. Pearson and The Pearson Family Members Foundation (the "Foundation"), submits the following Motion to Compel pursuant to Fed. R. Civ. P. 37. The Foundation requests that the Court enter an Order compelling Defendant, The University of Chicago (the "University"), to (1) complete its document production by September 13, 2019, at the latest; (2) provide full responses and responsive documents with respect to certain discovery requests; and (3) produce documents related to The Pearson Global Forum in 2019 (which are responsive to previous requests).

**INTRODUCTION**

This is the second time in the course of this litigation that the Foundation has had to request that the Court compel the University to provide substantive answers and documents responsive to the Foundation's discovery requests. As background, this lawsuit arises out of an agreement

between the Foundation and the University in which the Foundation agreed to make one of the largest donations to the University in its history, $100 million. In exchange, the University agreed to establish The Pearson Institute for the Study and Resolution of Global Conflicts ("The Pearson Institute"), the first research institute devoted solely to the study and resolution of global violent conflicts. In furtherance of that agreement, the University was obligated, *inter alia,* to hire preeminent chaired faculty; to bring on world class leadership to manage The Pearson Institute's operations on a day-to-day basis; to develop new courses that would comprise the curriculum for The Pearson Institute; to steward a fellowship and scholarship program to support the best and the brightest students at The Pearson Institute; and to annually host The Pearson Global Forum, which was intended to convene the world's foremost thinkers and influencers each year to develop new strategies to prevent and resolve global violent conflicts. After the University failed to fulfill these and many other promises, the Foundation was forced to bring this lawsuit.

The Foundation has alleged claims for breach of contract and breach of the duty of good faith and fair dealing and has propounded written discovery and document requests targeted at discovering facts relevant to these two claims and the defenses raised by the University. The University has resisted disclosing certain information, claiming that the discrete subjects of the requests were not the subject of explicit allegations in the Complaint, and that therefore the requests are beyond the scope of permissible discovery. To be clear, the University is arguing that unless there is a factual allegation in the complaint that specifies the particular fact that is the subject of a discovery request, that discovery request is beyond the scope of discovery and the University will not provide a response. The pleading standard and limitation on discovery that the University is attempting to impose simply does not exist.  The Federal Rules of Civil Procedure do not limit discovery to only the specific allegations of fact set forth in a complaint. As such, the

University has no legitimate basis to oppose the discovery sought and should be compelled to produce the responsive information.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

1. On February 20, 2018, the Foundation filed its Complaint [Dkt. 2] against the University alleging, among other claims, breach of contract and a breach of the duty of good faith and fair dealing.

2. On June 5, 2018, written discovery commenced with the Foundation's issuance of its First Set of Discovery Requests.

3. As of April 10, 2019 – nearly a year later – the University had produced only 9,064 documents in response to the Foundation's first set of discovery requests. Because of the dates set by the Court in its scheduling order, the Foundation was concerned that, at the pace that the University was moving, the parties would not be able to meet the dates set by the Court for this case overall. By agreement of the parties, and with the purpose of addressing this concern and adhering to the Court's Amended Scheduling Order [Dkt. 65], each party committed to substantially complete its document production by May 17, 2019.

4. On July 2, 2019, counsel for the Foundation sent the University's counsel a letter detailing various issues and deficiencies it had identified in the University's written discovery responses and document production. *See* July 2, 2019 Letter from S. Hathaway to University's Counsel, Exhibit A.

5. The parties exchanged additional letters before ultimately holding a meet and confer on the remaining issues on July 31, 2019.

6. It was not until that July 31, 2019 meet and confer that the University's counsel announced that there were an additional "10,000 to 12,000" documents it intended to produce at

some indeterminate point in the future. Following the meet and confer, the Foundation's counsel inquired as to when these documents could be expected to be produced. The University did not provide a specific date by which this production could be expected, stating only that it would likely be the next week.

7. The Foundation had earlier complied with the May 17, 2019 deadline for completion of its production.

8. Since May 17, there have been numerous additional document productions by the University, without any representation by the University as to when its production will be complete. In total, including the additional 10,000 to 12,000 documents yet to be produced, the University has (or will have) produced at least 22,000 documents since it represented that its production would be substantially complete by May 17, 2019. Further, this number does not include documents responsive to the Foundation's second and third requests which were/are due to be produced, pursuant to Fed. R. Civ. P. 34, on June 12, 2019, and August 18, 2019, respectively. And, it is unclear whether the University still has remaining productions responsive to the Foundation's first set of discovery requests beyond the "10,000 to 12,000" documents it says will be forthcoming, as the University has refused to shed light on this issue despite repeated requests by the Foundation's counsel. Somehow, the University steadfastly maintains that its production was "substantially complete" as of May 17, 2019. *See*, *e.g.*, Email from A. Baak, dated July 17, 2019, Exhibit B.

9. In addition to the issue of the University's tardy document production, several specific discovery requests remained at issue following the July 31, 2019 meet and confer and are ripe for consideration by this Court. Those specific requests are fully set forth below.

10. Pursuant to LCvR 37.1, the Foundation's counsel hereby certifies that they have fulfilled their duty to confer regarding the subject matter of this Motion through telephone conferences with opposing counsel and the exchange of emails and letters, but no accord has been reached. The Foundation's counsel are located in Tulsa, Oklahoma, and the University's lead counsel are located in Chicago, Illinois, making an in-person conference infeasible.

## ARGUMENT AND AUTHORITIES

### I. THE STANDARD

"[C]ivil discovery is not narrowly cabined solely to a search for admissible evidence directly relating to known, and specific, allegations set forth in the plaintiff's complaint." *McConnell v. Canadian Pac. Realty Co.*, 280 F.R.D. 188, 195 (M.D. Pa. 2011). Rather, Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense …" Relevant information "need not be admissible in evidence to be discoverable." *Id.* "Relevance" for the purposes of discovery is broadly construed and a request should be considered relevant "if there is any possibility that the information sought may be relevant to the subject matter of the action." *Dotson v. Experian Information Solutions, Inc.*, 2019 WL 440588, *3 (W.D. Okla. Feb. 4, 2019) (internal quotations and citations omitted); *see also Reibert v. CSAA Fire & Casualty Ins. Co.*, 2018 WL 279348, *3 (N.D. Okla. Jan. 3, 2018) ("Following the 2015 Amendment, relevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense.").

### II. THE UNIVERSITY SHOULD BE ORDERED TO COMPLETE ITS PRODUCTION OF DOCUMENTS BY A DATE CERTAIN.

The University served its written responses and objections to the Foundation's First Set of Discovery Requests on July 16, 2018. By agreement of the parties, the University's production of

documents responsive to the Foundation's *first* set of requests was to be substantially completed by May 17, 2019. By May 17, 2019, the University had produced 52,750 documents. Between May 17, 2019 and the present, the University has produced approximately 12,000 more documents. During the July 31, 2019 meet and confer, counsel for the University indicated that it had another 10,000 to 12,000 documents to produce. Counsel for the University later indicated that it intended to produce those documents during the week of August 12, 2019. However, as of the filing of this pleading, no documents have been produced. Moreover, the Foundation has no way of knowing how many more documents may be produced by the University or when they might turned over. As such, the University should be compelled to produce all of its documents, including those responsive to the Foundation's second and third set of document requests, by a date certain. The Foundation respectfully submits that September 13, 2019, should be the deadline set for such production.

### III. THE UNIVERSITY SHOULD BE COMPELLED TO FULLY ANSWER THE FOUNDATION'S WRITTEN DISCOVERY AND PRODUCE RELATED DOCUMENTS.

The University has refused to answer, or has improperly limited its answers, to several discovery requests based upon its unilateral opinion about what the scope of the Foundation's claims should be. With regard to several of the requests for production of documents, the University has taken the position that, according to the University, the requests are not tied to specific allegations in the Complaint and therefore are not discoverable. This position attempts to narrow the scope of discovery to far less than what is permissible under the Federal Rules. *See, e.g., Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("under Rule 8, '[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"); *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir.

2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden."). "[C]ivil discovery is not narrowly cabined solely to a search for admissible evidence directly relating to known, and specific, allegations set forth in the plaintiff's complaint." *McConnell v. Canadian Pac. Realty Co.*, 280 F.R.D. 188, 195 (M.D. Pa. 2011). The remaining justifications for the University's withholding of full responses are likewise without merit. The specific discovery requests at issue will be addressed *seriatim*.

## DISCOVERY REQUESTS AT ISSUE

### Interrogatories

**A. Interrogatory No. 17**

This interrogatory requests the identity of each change or modification that was made to The Pearson Institute website, the Harris School Website, the University's website, etc., "or any other publication relating or referring to The Pearson Institute" with regard to three discrete topics: (1) The Pearson Institute's leadership or organizational structure; (2) the titles of Professors Robinson, Dube, Blattman, or Myerson; and (3) the mission of The Pearson Institute.

**INTERROGATORY NO. 17:**

**Please identify each and every change or modification made to The Pearson Institute website, the Harris School Website, the University's website, press release(s), media information kit(s) for The Pearson Institute, or any other publication relating or referring to The Pearson Institute regarding (1) The Pearson Institute's leadership or organizational structure, including but not limited to any change in text to or from the words "institute director," without regard to capitalization; (2) the titles of Professors Robinson, Dube, Blattman, or Myerson, and (3) the mission of The Pearson Institute. Please include in your answer the actual language of the change or modification (both before and after such change or modification), the date and time of the change or modification, and the person(s) making, reviewing, approving, or directing the change or modification.**

**ANSWER TO INTERROGATORY NO. 17:** The University incorporates its General Objections. The University further objects to this request as overbroad and unduly burdensome because it would require the University to catalog a significant number of changes to the listed websites over an unlimited timeframe that are not relevant to any issue in dispute. The website for The Pearson Institute, for example, is changed and modified on a regular basis and the University

does not systematically track those changes in the regular course of business, nor does it have the ability to automatically generate a list of all of those changes. The University is willing to meet and confer regarding a narrowed request for information about particular changes and modifications to specific pages of The Pearson Institute website within a narrowed date range.

(University's Discovery Responses and Objections to the Foundation's Second Set of Discovery Requests, Exhibit C, p. 4-5).

The University's Answer to Interrogatory No. 17 acknowledges that at least some of the information responsive to this interrogatory *is* relevant to issues in dispute, but refuses to provide *any* responsive information, claiming that doing so would be an undue burden. The Foundation is aware that The Pearson Institute's website has an "editing tool' or other software that allows the University to generate a report listing specific changes made to the website during stated periods of time, including from the inception date of the website. The University uses this "editing tool" or software each time it has made a change or modification to The Pearson Institute's website. The University has claimed that it is too burdensome to use this tool to provide information responsive to this Interrogatory.

The University and the Foundation have attempted to meet and confer regarding narrowing the scope of Interrogatory No. 17. In its August 7, 2019 letter, counsel for the University advised:

> If the Foundation is willing to narrow the request to modifications to Institute Director Robinson's title on the Faculty Page of the Pearson Institute website (https://thepearsoninstitute.org/faculty-scholars/faculty) for a specific time period, the University would be willing to provide that information.

(August 7, 2019 Letter from F. Paul to S. Hathaway, Exhibit D). While the Foundation is willing to limit the inquiry for the four individuals listed in the interrogatory to Professor Robinson only, the proffered narrowing by the University is extreme and would result in the Foundation not receiving information related to the deliberate alteration by the University of Professor Robinson's title in other publications and websites. It would also result in the Foundation not receiving relevant information about the alteration of the Institute's organizational structure and any changes by the

University in the mission of The Pearson Institute.  Each of these issues of fact regarding the University's performance of its obligations is squarely at issue in this case.

Directly at issue in this lawsuit is the University's practice of "failing to deal with the Foundation with honesty, forthrightness, and transparency" [Dkt. 2, ¶ 109]. One such instance of this is the alteration of Professor Robinson's title on The Pearson Institute's website; however, there are likely many more such instances. Moreover, evidence of changes to The Pearson Institute-related websites and publications are relevant to illustrating the extent to which the change to Professor Robinson's title constituted a lack of good faith and fair dealing. The Foundation does not have the benefit of knowing the full scope of information responsive to this request (like the University) and is therefore not in the position to readily determine a way to narrow Interrogatory No. 17 while still obtaining the necessary information. In any event, the entirety of what is sought in this request is relevant and discoverable.

**Requests for Production**

With regard to Requests for Production Nos. 38 and 39, the University claims that these requests are outside the scope of the discovery because the information sought by them was not specifically referenced in the Complaint. As mentioned above, the Complaint contains numerous allegations concerning the University's various breaches of the Grant Agreement as well as the University's general breach of the duty of good faith and fair dealing in carrying out its obligations under the Grant Agreement. The Foundation's Requests for Production of Documents Nos. 38 and 39 seek to discover information that is directly relevant to these claims. The University's position that discovery is limited to specific allegations contained in the Complaint is not grounded in law and its other objections are similarly meritless as more thoroughly set forth below.

9

A. Request No. 38

**REQUEST NO. 38:**

Please produce all documents relating to the consideration, recruitment, search for, hiring, and resignation of candidates for the Forum Executive Director position, including without limitation documents related to both individuals that have held this title.

**ANSWER TO REQUEST NO. 38:** The University incorporates its General Objections. The University incorporates its General Objections. The University objects to this request as duplicative of Request No. 2 from the Foundation's First Set of Requests for Production. In response to Request No. 2, the University has already conducted a reasonable search for documents relating to the consideration, recruitment, search for, and hiring of candidates for the Forum Executive Director position. The University objects to the extent the request seeks additional documents as unduly burdensome, including because this information will have little bearing on the resolution of the issues to be decided in this case.

(Exhibit C).

Contrary to the objections raised by the University in its written answer to Request No. 38, this request is not merely duplicative of Request No. 2. As counsel for the Foundation explained in its July 2, 2019 correspondence (Exhibit A), Request No. 2 sought documents "relating to the search for, naming of, replacement of, change in title to, or appointment of" the Forum Executive Director position (among other positions). However, Request No. 38 also seeks all documents related to the resignation (or termination of an employment agreement or other form of agreement) of candidates for the Forum Executive Director position and specifically asks for documents related to both individuals who have now held this title.

Despite having already produced some documents related to the Forum Executive Director position, the University has now determined that such information is no longer within the scope of discovery because the Foundation's complaint "raises no claims regarding the individuals who have held the position of Forum Executive Director." (August 7, 2019 Letter from F. Paul to S. Hathaway, Exhibit D, p. 2) Putting aside its misapplication of the Federal Rules, the University's

10

argument misses the point entirely. The resignation or termination of a key employee is highly relevant to the Foundation's claims, as these documents are likely to shed further light on the disarray and mismanagement within The Pearson Institute and the University of Chicago that is the genesis of Plaintiff's claims in this case.

### B. Request No. 39

As with Request No. 38, the University has objected to producing any documents responsive to Request No. 39 because (as the University perceives it) Request No. 39 is not specifically tied to any allegations contained in the Complaint.

**REQUEST NO. 39:**

**Please produce all documents describing or evidencing the expenditure of any and all funds on behalf of The Pearson Institute, including without limitation books and records showing funds expended from The Pearson Institute endowment and other funds the University claims to have expended to support The Pearson Institute.**

**ANSWER TO REQUEST NO. 39:** The University incorporates its General Objections. The University objects to this request as overbroad and unduly burdensome, and as vague and ambiguous with respect to the term "documents describing or evidencing the expenditure of . . . funds." The University has already produced annual budgets and annual reports for The Pearson Institute and The Pearson Global Forum. Complying with this request would appear to require the University to search for and produce, for example, every receipt for every expenditure incurred by The Pearson Institute or The Pearson Global Forum. The University further objects because this request seeks documents that are not relevant to the issues to be resolved.

(Exhibit C).

The University's objections to Request No. 39 are meritless. First, with regard to the University's claim that "[c]omplying with this request would appear to require the University to search for and produce, for example, every receipt for every expenditure incurred by The Pearson Institute or The Pearson Global Forum," *the Foundation has explicitly stated that it would accept, as fully responsive, a **single document** such as a general ledger or other regularly-kept business record, that reflects expenditures*. Documents already produced by the University demonstrate that

11

the University may have a regular business practice of keeping track of its expenditures, thus the University has no basis for arguing that Request No. 39 is unduly burdensome.

Second, it is impossible to conceive how the University's expenditures of the Foundation's funds could *not* be relevant to the Foundation's claims of breach of contract (including the misuse of funds for which a specific contract provision exists in the Grant Agreement) and breach of duty of good faith and fair dealing. Whether the University was using the Foundation's funds in furtherance of the University's obligations under the Grant Agreement merely for ancillary purposes or for purposes unrelated to the furtherance of the mission of The Pearson Institute is directly relevant to the University's obligation of good faith and fair dealing. In addition, the Foundation's claims call into question the University's inclusion of a footnote in the March 31, 2017 draft operating plan and budget, asserting for the first time the University's purported unilateral right to charge millions of dollars of operating expenses paid by the Harris School of Public Policy against The Pearson Institute's funds. [Dkt. 2, ¶¶ 42-44]. The University claims in its First Amended Counterclaim [Dkt. 69, ¶ 24] that it has incurred significant expenses of its own in operating The Pearson Institute, but it refuses to reveal anything about those claimed expenses. Information about all expenditures should be produced.

## IV. THE UNIVERSITY SHOULD BE COMPELLED TO PRODUCE DOCUMENTS RELATED TO THE 2019 PEARSON GLOBAL FORUM.

Despite the fact that holding the annual Pearson Global Forum was a critical aspect of the Grant Agreement, the University has taken the position with regard to all discovery requests that it will not produce documents related to The Pearson Global Forum planned for 2019, essentially claiming that the Foundation has not sufficiently pled allegations relating to that specific issue and that producing responsive documents would not be proportional to the needs of this lawsuit. The Foundation wholeheartedly disagrees.

First, the Foundation brought this lawsuit in part because the University anticipatorily repudiated its material obligation to hold an inaugural Pearson Global Forum in 2018. While the University did ultimately hold a forum after this lawsuit was filed, information pertaining to the 2018 forum, as well as The Pearson Global Forum to be held in 2019, remains relevant to the Foundation's claims. The documents produced to date show that the University only began making plans for the 2018 Pearson Global Forum *after* the Foundation expressed its position that a failure to hold the forum would constitute a material breach. Thereafter, the University threw together at the last minute a one-day program that fell far short of expectations. The Pearson Global Forum was supposed to have been a sophisticated, polished two-to-three-day forum that highlighted the Institute's research during the course of the past year and engaged important policy advisors from across the globe.

The Foundation anticipates the University will argue at trial that it has complied with its obligation under the Grant Agreement to host the forum. However, information produced to date indicates that the University began planning the location for The Pearson Global Forum in 2019 more than a year in advance—demonstrating its 2018 effort to be a last-minute litigation strategy, rather than a good faith effort to host the forum. Information and communications related to The Pearson Global Forum in 2019 are therefore highly relevant to contrasting and comparing the efforts made by the University with regard to its contractual obligations *pre-* and *post*-filing of the Complaint. The Foundation also believes that such documents will contain party admissions with regard to the relative effort put forth in organizing and planning The Pearson Global Forum in

2018 vis-à-vis The Pearson Global Forum to be held in 2019. The University should be compelled to produce documents related to The Pearson Global Forum in 2019.[1]

## V. THE FOUNDATION REQUESTS A RULING FROM THE COURT WITH RESPECT TO THE ARGUMENT RAISED BY THE UNIVERSITY ABOUT THE SCOPE OF THE FOUNDATION'S COMPLAINT.

With respect to the 2019 Pearson Global Forum documents, and some of the discovery requests referenced above, the University has argued that the discovery sought is not within the scope of the Foundation's Complaint. The Foundation asserts that all of the discovery sought is relevant to its claims, which have met Rule 8's pleading standard, and the specific allegations related to the discovery sought need not be pled in order to obtain the discovery sought in this Motion. As such, the Foundation respectfully requests that the Court address these competing arguments in its ruling so that the Foundation can be apprised whether it is correct regarding the scope of discovery, or whether the Foundation should seek leave to amend its Complaint to explicitly state the factual allegations underpinning its request for this discovery.

## CONCLUSION

The University's unwarranted narrowing of the scope of permissible discovery should not be tolerated and the University should be compelled to respond to Interrogatory No. 17, produce documents responsive to Request for Production Nos. 38 and 39, as well as documents related to The Pearson Global Forum in 2019. The Foundation further seeks an Order from this Court

---

[1] The documents related to the 2019 Pearson Global Forum are responsive to several prior discovery requests of the Foundation, including, among others, Request No. 1 (seeking information related to compliance with the Grant Agreement, of which hosting the annual Pearson Global Forum would be relevant to); Request No. 9 (seeking all documents relating to "the creation of, the planning for, and the budgeting of The Pearson Global Forum…"); Request No. 31 (seeking documents related to any entity/committee with supervisory authority over The Pearson Global Forum); and Request No. 32 (seeking documents that contain information referring or relating to the allegations made in the Complaint). [Dkt. 54-1].

compelling the University to complete its document production by no later than September 13, 2019. Finally, the Foundation seeks explicit instruction from the Court as to whether an amendment to the Foundation's Complaint is necessary at this stage as maintained by the University to receive the requested discovery.

Respectfully submitted,

*/s/ P. Scott Hathaway*
P. Scott Hathaway, OBA # 13695
Isaac R. Ellis, OBA # 30072
4000 One Williams Center
Tulsa, OK  74172-0148
Telephone:  918-586-8510 P. Scott Hathaway
Facsimile:  918-586-8610 P. Scott Hathaway
Telephone:  918-586-8996 Isaac Ellis
Facsimile:  918-586-8322 Isaac Ellis
Email:	shathaway@cwlaw.com
	iellis@cwlaw.com

**THE THOMAS L. PEARSON AND THE PEARSON FAMILY MEMBERS FOUNDATION**

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 16th day of August, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registrants:

Andrew C. Baak
Rebecca W. Bacon
Jessica Lynn Dickerson
Jeffrey A. Hall
William S. Leach
Taylor A. R. Meehan
Faye E. Paul

                */s/ P. Scott Hathaway*
                P. Scott Hathaway