

P. Scott Hathaway | Partner
p 918.586.8510 | f 918.586.8610 | SHathaway@cwlaw.com

Conner & Winters, LLP
4000 One Williams Center | Tulsa, OK 74172-0148
p (918) 586-5711 | f (918) 586-8982 | cwlaw.com

July 2, 2019

William S. Leach
Jessica L. Dickerson
McAfee & Taft, a Professional Corporation
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, OK  74103
Bill.leach@mcafeetaft.com
Jessica.dickerson@mcafeetaft.com

*Via Electronic & First Class Mail*

Jeffrey A. Hall
Rebecca Weinstein Bacon
Taylor A.R. Meehan
Bartlit Beck Herman Palenchar & Scott, LLP
54 West Hubbard Street, Suite 300
Chicago, IL  60654
Jeffrey.hall@bartlit-beck.com
Rweinstein.bacon@bartlit-beck.com
Taylor.meehan@bartlit-beck.com

Andrew C. Baak
Bartlit Beck Herman Palenchar & Scott, LLP
1801 Wewatta Street, Suite 1200
Denver, CO  80202
Andrew.baak@bartlit-beck.com

Re:   *The Thomas L. Pearson and The Pearson Family Members Foundation v. The University of Chicago;* In the United States District Court for the Northern District of Oklahoma, Case No. 18-CV-99-GKF-FHM; Deficiencies Identified in Defendant's Written Responses to Plaintiff's Second Set of Discovery Requests and Document Production(s) to Date and Request for Supplementation of Same

Dear Counsel:

We have reviewed the University of Chicago's Responses and Objections to Plaintiff's Second Set of Interrogatories and Requests for Production of Documents. This letter is intended to outline deficiencies we identified in those Responses as well as in the University's document production(s) that we have received to date, and to request supplementation of the same. As we are still reviewing the University's document production(s), the Foundation reserves all rights with respect to any additional deficiencies that become apparent as discovery proceeds.

As an initial matter, we continue to take issue with certain General Objections proffered by the University. Specifically, the Foundation objects to General Objection No. 2 to the extent it is intended to suggest that the University is not required to search for responsive paper documents. In our review of the University's document production to date, we have seen little, if any, documents from the University's paper files. All such responsive paper files should be produced immediately.

**EXHIBIT A**

Page 2

The Foundation further incorporates its statements in its prior deficiency letter dated August 21, 2018 with regard to the University's other General Objections.

Beyond the issues identified above with the University's General Objections, the Foundation requests supplementation of the University's written responses and document production as follows:

## WRITTEN RESPONSES

### a. Interrogatories

**Interrogatory No. 17**. This interrogatory requests the identity of each change or modification that was made to The Pearson Institute website, the Harris School Website, the University's website, press releases(s), media information kit(s) for the Pearson Institute, or any other publication relating or referring to The Pearson Institute with regard to three discrete topics: (1) The Pearson Institute's leadership or organizational structure; (2) the titles of Professors Robinson, Dube, Blattman, or Myerson; and (3) the mission of The Pearson Institute. In its response, the University objects that the timeframe is "unlimited." Because the creation of the Pearson Institute was only publicly announced in September of 2015, we consider the University's objection unreasonable as the time period is inherently limited to a period of less than five years. Nonetheless, you may consider Interrogatory No. 17 to be explicitly limited to the timeframe between January 1, 2014, and the present. As for the remainder of the University's response, the University's failure to systematically track such changes and alleged inability to automatically generate a list of all such changes does not mean that the University is relieved from providing *any* information responsive to Interrogatory No. 17. We note that the University has stated that it is willing to "meet and confer regarding a narrowed request for information about particular changes and modifications to specific pages of The Pearson Institute website within a narrowed date range." Without making any concession as to the reasonableness of limiting Interrogatory No. 17 to changes to "specific pages of The Pearson Institute website," we welcome you to advise as to what information the University would be willing to provide in response to Interrogatory No. 17.

**Interrogatory No. 18**. This interrogatory asks the University to identify each and every date on which the "Institute Director" of The Pearson Institute has provided to the Advisory Council a written report of The Pearson Institute and The Pearson Global Forum pursuant to Section 3.5(c) of the Grant Agreement. It appears from the University's written response (which does not refer to the "Institute Director") that the "Institute Director" has never provided the written reports required by the Section 3.5(c) of the Grant Agreement to the Advisory Council. If this is accurate, please supplement the University's response to so state. Additionally, we note that the University fails to state with certainty whether such reports were in fact provided to the Advisory Council in the fall of 2017. A definitive answer is clearly within the University's grasp; thus, the University should supplement its response to state with specificity whether such reports were provided and if so, on which date.

Page 3

**Interrogatory No. 19**. This interrogatory asks the University to identify each and every date on which the "Institute Director" of The Pearson Institute, the Forum Executive Director and the Dean of the Harris School provided to the Advisory Council an overview of the then-current and prospective activities of The Pearson Institute and The Pearson Global Forum pursuant to Section 3.5(d) of the Grant Agreement. The production of minutes from the Advisory Council Meetings is not directly responsive to Interrogatory No. 19. As the University has chosen to produce the Advisory Council Meeting minutes in lieu of a direct response, we ask that the University please supplement its response to specify that the Advisory Council minutes reflect the entirety of the information responsive to this interrogatory. Finally, we note that the University's response indicates that the minutes from the May 2019 Advisory Council meeting will be forthcoming. We ask that you please produce those as soon as possible (in accordance with the agreed-upon ESI protocol) and supplement the University's response to Interrogatory No. 19 to specify the bates range for those minutes.

**Interrogatory No. 21**. This interrogatory asks the University to identify all philanthropic support provided to the Donor, The Pearson Institute, The Pearson Global Forum, etc., by any member of the Advisory Council, the University, the University's faculty, etc.; and, the amounts, dates, and identity of those making such donations. The University should withdraw its objections. The information sought is neither irrelevant nor overly burdensome for the University to provide. Whether the University has fulfilled its obligation to develop strategies for fundraising as required by the Grant Agreement is directly at issues in this lawsuit. Presumably, the University has a method of keeping track of its own fundraising efforts, so responding to this request should not place any undue burden on the University. As for the University's objection that "philanthropic support" is not defined, the meaning should be clear from the interrogatory itself. Nonetheless, for clarification, the University should give "philanthropic support" the same meaning it would give to the term as used on page 14 of the Grant Agreement. Finally, as for the University's objection that the information sought is "confidential", the Foundation notes that there is a Protective Order entered in this lawsuit that adequately protects against improper disclosure of any truly confidential information.

**Interrogatory No. 22**. This interrogatory requests the identification of each person who drafted, reviewed, revised, approved or authorized the footnote found in the March 31, 2017 budget submission. It does not seek information protected by the attorney-client privilege or any other "applicable law, privilege, or immunity" and it is not unduly burdensome because the responsive information should be readily available to the University. Please withdraw the University's objections.

**Interrogatory No. 23**. This interrogatory asks for the identification of: (1) the drafters of the documents entitled "Default, Notice, Cure and Termination Timeline" and "Meeting to Discuss Options for Pearson Institute"; (2) the identity of the individuals who received and/or reviewed a copy of each document; (3) the date(s) on which the documents were created; (4) the identification of the individual whose handwriting appears on the first page of Exhibit A; and, (5) all steps taken by the University to demand the Chicago Maroon's return and removal of Exhibit A from the Internet. Regarding the objections raised by the University in response to this

Page 4

interrogatory, we ask that you please withdraw each of them. First, it is unclear from the University's response what responsive information, if any, is being withheld because of attorney-client privilege and/or the work product doctrine. Regardless, it is difficult to understand how either type of protection would apply. The identities of the drafters, recipients, and the dates on which the documents were created is information that would be required to be included in a privilege log if the documents themselves were withheld on some claim of privilege. *See* LCvR 26.4(a). Further, all steps taken by the University to demand the return and removal of the confidential information from the internet would be known to the Chicago Maroon; thus, to the extent the University contends the Chicago Maroon is an entirely separate entity, any protection of this information would have already been waived. Second, with regard to the University's relevance objection, the Plaintiff has alleged that the University breached the confidentiality provision in the Grant Agreement. The University has denied that allegation and thus all steps taken by the University to demand the return of the information and the removal of the confidential information from the Internet is directly at issue in this litigation. Thus, the University should withdraw its objections and provide a full and complete response to Interrogatory No. 23. Finally, with regard to the University's statement that it does not know the identity of the individual whose handwriting appears on the first page of Exhibit A, we ask that you please verify that the University has made an inquiry on each of the individuals who received and/or reviewed a copy of the documents.

### b. Requests for Production

**Request No. 38**. This Request is not merely duplicative of Request No. 2. While Request No. 2 did ask for the production of all documents "relating to the search for, naming of, replacement of, change in title to, or appointment of" the Forum Executive Director position (among other positions), Request No. 38 is intended to request all such documents as well as all documents related to the resignation of candidates for the Forum Executive Director position and specifically asks for documents related to both individuals who have now held this title. The Foundation takes issue with the University's objections that the additional documents this request seeks constitute an undue burden as this information is within the parameters of the agreed-upon ESI protocol. Please withdraw the University's objections to this request and produce all responsive documents to the extent you have not already done so.

**Request No. 39**. This request seeks documents describing or evidencing the expenditure of any and all funds on behalf of The Pearson Institute. The University has objected to this request on the basis of relevance, burden, overbreadth, and claims that it has "already produced annual budgets and annual reports for The Pearson Institute and The Pearson Global Forum, which include detailed information about projected and actual expenditures..." The University's objections are unfounded and the budgets and reports referenced demonstrate the Foundation's need for the documents sought in this request. As detailed in my letter dated June 7, 2019, the University's budget submissions have been woefully insufficient for purposes of determining how the Foundation's grant is being spent. Instead, the University's budgets raise more questions about how funds are being spent than they answer. Moreover, the University readily has access to the documents sought in this request. Based on our review of the documents to date, it appears that Rebecca Rosen (and perhaps others) compiled Pearson receipts on a monthly basis and accounted for them in a spreadsheet. *See, e.g.*, UOFC0158845. Because we have seen references

Page 5

to such documents in the University's production to date, we know these documents can be produced. Further, these documents are clearly relevant to the issues in this case as the University's ability to act as a proper steward of these funds is at the heart of this lawsuit. Moreover, the information is also relevant to the University's Counterclaim. Therefore, please withdraw the University's objections and produce all reports, ledgers, excel spreadsheets, etc., which reflect or evidence the expenditure of any and all funds on behalf of The Pearson Institute.

**Request No. 40**. This request seeks documents related to the expenditure of Pearson Institute Funds. The issue of whether the University is (and/or has been) a proper steward of these funds is at the heart of this litigation, thus the documents sought by this Request are clearly relevant to an issue in dispute. Please withdraw your objections and produce the documents responsive to this Request.

**Request. No. 41**. This request asks for documents related to the Chicago Maroon's possession of documents regarding this dispute. If any responsive documents are being withheld on the basis of privilege, the University should so state and include such documents in its privilege log. As for the University's objection on relevance grounds, that objection is meritless. It is undisputed that the University had an obligation, pursuant to the terms of the Grant Agreement, to keep all communications related to the Grant Agreement confidential. Whether the University breached that obligation by allowing the Chicago Maroon to obtain access to confidential documents related to the Grant Agreement is relevant to this lawsuit. The Foundation is entitled to discover documents regarding the University's investigation into how the Chicago Maroon came to possess those documents, all communications with the Chicago Maroon regarding those documents, and copies of all related documents the University understands the Chicago Maroon to possess, all of which bear directly on the question of whether the University breached the Grant Agreement and if so, whether it took sufficient actions to remedy that breach.

## THE UNIVERSITY'S DOCUMENT PRODUCTION TO DATE

**2019 Pearson Global Forum in Berlin.** Documents relating to the planning for the 2019 Pearson Global Forum to be held in Berlin are responsive to Plaintiff's Request for Production No. 9 and should be produced on a continuing basis. The same is true for other categories of responsive documents that come into existence during the course of this case.

**Documents Marked "NONRESPONSIVE."** In reviewing the documents the University has produced to date, it has come to our attention that various attachments and/or parent emails have been redacted in their entirety with no other explanation other than "NONRESPONSIVE." At the outset, it is difficult to imagine how, for example, attachments to emails entitled "Pearson Institute Team Weekly Meeting" can be "nonresponsive." It is similarly questionable how an email can be designated "NONRESPONSIVE" in its entirety while its attachments concern topics such as coursework for the Pearson Institute and are produced without redaction. Each document that has been redacted and designated "NONRESPONSIVE" should be produced without redactions immediately.

Page 6

**Blank Pages.** A number of the documents that have been produced to date are completely blank, but for a bates stamp. *See, e.g.,* UOFC0166174, UOFC0090756. It is impossible for us to know whether these pages were blank to begin with, or whether these documents were redacted prior to production. It would be similarly impossible for us to identify each blank document in the University's production as our review is still underway, so please consider the two provided examples as illustrative only and not an exhaustive list of the blank documents we have identified to date or might identify in the future. Because you are in a better position to ascertain whether these pages were originally blank, we ask that you please specify whether any documents in the University's production(s) were redacted prior to production; and, if so, state the basis for said redaction(s). If you have not redacted any documents on behalf of the University, apart from those which were labeled "NONRESPONSIVE" and addressed above, please confirm that all blank pages produced were originally blank.

**Responsive Documents Referenced but Not Produced.** Numerous communications that the University has produced to date include references to documents that were not attached to the communications themselves but appear to be directly responsive to the document requests propounded. By way of example, please refer to UOFC0039223. In that communication, there is a link to a document that Alex Carr is transmitting to James Robinson, Sheila Kohanteb, and Nicki Nabasny related to The Pearson Global Forum. We have seen other examples of this in numerous other documents, thus the Foundation does not intend the aforementioned example to be an exhaustive list. Please confirm that all documents which are linked in responsive communications either have been (or will be) produced in accordance with the agreed-upon ESI protocol. This should include all documents shared and/or transmitted via links to Google Docs/Drive, Drop Box, and/or any other similar platform.

**Documents Produced without Metadata.** As noted in a prior email, we are in receipt of documents bates-labeled UOFC0179145-56 (the University's production number 17) which were not produced in accordance with the agreed-upon ESI protocol and instead were produced in .pdf format with no load file or any metadata provided. Please re-produce these documents in the agreed-upon format and with a load file containing all of the agreed upon fields of metadata.

**Personal Email Files, Handwritten Notes, and Dropbox accounts.** As a reminder, the University's duties to produce documents responsive to the Foundation's request extends to the full scope of documents within the agreed upon custodians' possession, custody, or control. Thus, all responsive documents contained in the custodians' personal and work email files, cell phones and other mobile devices, Dropbox, Google accounts (Google Drive, Google Docs, etc.), personal email used for University business, and paper files should be produced.

**Compliance with Court's Order on Motion to Compel.** Finally, it appears that your productions to date do not include documents from custodians that the Court ordered produced. Please confirm when such documents will be produced. In addition, please confirm the extent to which the University has satisfied its other obligations under the Court's Order and when any outstanding items will be completed.

Page 7

The Foundation looks forward to your response and to discussing these matters further. We are hopeful agreement can be reached on supplementation and thank you for your attention to these matters.

Sincerely yours,

P. Scott Hathaway