IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

THE THOMAS L. PEARSON AND
THE PEARSON FAMILY MEMBERS FOUNDATION,

    Plaintiff and Counterclaim Defendant,

v.

THE UNIVERSITY OF CHICAGO,

    Defendant and Counterclaimant.

AND

THE UNIVERSITY OF CHICAGO,

    Counterclaimant and Defendant,

v.

THE THOMAS L. PEARSON AND
THE PEARSON FAMILY MEMBERS FOUNDATION,

    Counterclaim Defendant and Plaintiff,

THOMAS L. PEARSON,

    Counterclaim Defendant.

Case No. 18-cv-99-GKF-FHM

CONFIDENTIAL

**THE UNIVERSITY OF CHICAGO'S RESPONSES AND OBJECTIONS
TO PLAINTIFF'S SECOND SET OF INTERROGATORIES AND
<u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>**

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, The University of Chicago responds to Plaintiff's Second Set of Interrogatories and Requests for Production of Documents as follows:

**EXHIBIT C**

## GENERAL OBJECTIONS TO "GLOBAL DEFINITIONS"

The Foundation's discovery requests begin with "Global Definitions" applying to both its Interrogatories and Requests for Production. The University objects to these "Global Definitions" because those definitions purport to require discovery exceeding the bounds of reasonable and permissible discovery under the Federal Rules of Civil Procedure, the Local Civil Rules of the Northern District of Oklahoma, the Court's orders, or the parties' agreements. In particular:

1. The University objects to the inclusion of all "officers, directors, trustees, employees, agents, representatives, attorneys or accountants" in the definition of "You," "Your," "Yours," and "Defendant" because that definition seeks discovery of material beyond the University's possession, custody, or control or seeks discovery of material protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable law, privilege, or immunity.

2. The University objects to the definition of "document" if it would require the University to search for and produce types of electronically stored information beyond that agreed upon by the parties in a stipulated Electronically Stored Information (ESI) protocol.

3. The University objects to the definition of "identify," which purports to require the University to state an individual's name, address, telephone number, occupation or profession and job title, and name, address, and telephone number of such individual's current employer. The University will identify the names of relevant persons. Plaintiff may contact current and former University employees listed below only through the University's counsel at Bartlit Beck LLP, 54 West Hubbard Street, Suite 300, Chicago, Illinois 60654.

4. The University objects to the definition of "name," which requires the University to include "any person's first, middle, last, maiden and nickname, if any." The University will identify individuals using their first and last name; the University will identify individuals using

2

their middle initial only if necessary to avoid an ambiguity. The University will not identify individuals using any other names.

5. The University objects to Plaintiff's instruction that the University must give all undefined terms their "common meaning." The University will not speculate what Plaintiff means when it uses vague or ambiguous undefined terms.

## ANSWERS AND OBJECTIONS TO INTERROGATORIES

1. The University objects to the "Instructions for Interrogatories" because those instructions purport to require discovery exceeding the bounds of reasonable and permissible discovery under the Federal Rules of Civil Procedure, the Local Civil Rules of the Northern District of Oklahoma, the Court's orders, or the parties' agreements. In particular, the University objects to Interrogatory Instruction D, calling for information from "Defendant's representatives, agents, and attorneys," because it seeks information beyond the University's possession, custody, or control, or information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable law, privilege, or immunity.

2. The University objects to each and every interrogatory that seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable law, privilege, or immunity. The University's responses are not intended to be and should not be construed as a waiver of the attorney-client privilege, the attorney work-product doctrine, or any other applicable law, privilege or immunity.

3. The University objects to each and every interrogatory that calls upon the University to create documents that do not already exist. The University's responses and objections to any interrogatories are not an admission of any kind that documents responsive to the interrogatory exist.

4. The University responds to each interrogatory based on present knowledge, information, and belief. The University reserves the right to amend and/or supplement its responses as necessary, including after the completion of document collection and review or after discovery has been completed.

5. The University's objections and responses to Plaintiff's interrogatories are not intended to waive or prejudice any objections that the University may assert now or in the future, including, without limitation, objections to the relevance of the subject matter of any interrogatory, or to the admissibility of any response at trial.

6. The University's responses to specific interrogatories should not be construed to admit Plaintiff's characterizations of any documents, facts, theories, or conclusions.

7. For purposes of the University's Answers and Objections to Interrogatories, the relevant timeframe is January 1, 2014 to present, unless otherwise indicated by the University's specific answer or response.

**INTERROGATORY NO. 17:**

Please identify each and every change or modification made to The Pearson Institute website, the Harris School Website, the University's website, press release(s), media information kit(s) for The Pearson Institute, or any other publication relating or referring to The Pearson Institute regarding (1) The Pearson Institute's leadership or organizational structure, including but not limited to any change in text to or from the words "institute director", without regard to capitalization; (2) the titles of Professors Robinson, Dube, Blattman, or Myerson, and (3) the mission of The Pearson Institute. Please include in your answer the actual language of the change or modification (both before and after such change or modification), the date and time of the change or modification, and the person(s) making, reviewing, approving, or directing the change or modification.

**ANSWER TO INTERROGATORY NO. 17:**

The University incorporates its General Objections. The University further objects to this request as overbroad and unduly burdensome because it would require the University to catalog a significant number of changes to the listed websites over an unlimited timeframe that are not

4

relevant to any issue in dispute. The website for The Pearson Institute, for example, is changed and modified on a regular basis and the University does not systematically track those changes in the regular course of business, nor does it have the ability to automatically generate a list of all of those changes. The University is willing to meet and confer regarding a narrowed request for information about particular changes and modifications to specific pages of The Pearson Institute website within a narrowed date range.

INTERROGATORY NO. 18:

Please identify each and every date on which the "Institute Director" of The Pearson Institute has provided to the Advisory Council a written report of The Pearson Institute and The Pearson Global Forum pursuant to Section 3.5(c) of the Grant Agreement.

ANSWER TO INTERROGATORY NO. 18:

The University incorporates its General Objections.

Subject to these objections, the University states as follows: Three written reports of The Pearson Institute and The Pearson Global Forum, which include the information described in Section 5.1(b) of the Grant Agreement, were produced on an annual basis for the 2015-2016, 2016-2017, and 2017-2018 academic years.

At the time the 2015-2016 Impact Report for The Pearson Institute for the Study and Resolution of Global Conflicts was completed, the Advisory Council was not yet constituted. Associate Provost Nichole Nabasny likely provided a hardcopy of the 2016-2017 Annual Report for The Pearson Institute for the Study and Resolution of Global Conflicts to the members of the Advisory Council in the fall of 2017. Ms. Nabasny provided the 2017-2018 Annual Report for The Pearson Institute for the Study and Resolution of Global Conflicts to Advisory Council Chairman Darren Reisberg and Mr. Reisberg distributed that report to the rest of Advisory Council on December 5, 2018.

INTERROGATORY NO. 19:

Please identify each and every date on which the "Institute Director" of The Pearson Institute, the Forum Executive Director and the Dean of the Harris School provided to the Advisory Council an overview of the then-current and prospective activities of The Pearson Institute and The Pearson Global Forum pursuant to Section 3.5(d) of the Grant Agreement.

ANSWER TO INTERROGATORY NO. 19:

The University incorporates its General Objections.

Subject to these objections, an overview of the then-current activities of The Pearson Institute and The Pearson Global Forum were provided to the Advisory Council during the June 30, 2017, March 27, 2018, June 27, 2018, December 10, 2018, and May 16, 2019 Advisory Council meetings, as reflected in the respective minutes from those meetings. Pursuant to Federal Rule of Civil Procedure 33(d), minutes from the 2017 and 2018 meetings are being produced herewith at bates numbers UOFC0179145-53. Minutes from the May 2019 meeting will be produced once they are finalized.

INTERROGATORY NO. 20:

Please identify each and every date on which the "Institute Director" of The Pearson Institute and the Dean of the Harris School met semi-annually with the Donor to review, discuss and seek input from the Donor regarding the activities of The Pearson Institute, The Pearson Global Forum and on other matters pursuant to Section 5.1 (c) of the Grant Agreement.

ANSWER TO INTERROGATORY NO. 20:

The University incorporates its General Objections.

Subject to these objections, the University states as follows: Provost Daniel Diermeier, who was Dean of the Harris School until he was appointed as Provost on July 1, 2016, met in person with Thomas and/or Timothy Pearson to review, discuss, and seek input from them regarding the activities of The Pearson Institute, The Pearson Global Forum, and/or on other

6

matters pursuant to Section 5.1(c) of the Grant Agreement on at least the following approximate dates:

- August 26, 2015
- September 28, 2015
- October 23, 2015
- December 10, 2015
- September 29, 2016
- November 30, 2016
- December 1, 2016
- January 24, 2017
- February 13, 2017
- March 27, 2017
- May 4, 2017

Mr. Diermeier also frequently spoke with Thomas and Timothy Pearson by phone to review, discuss, and seek input from them regarding the activities of The Pearson Institute, The Pearson Global Forum, and on other matters pursuant to Section 5.1(c) of the Grant Agreement.

Institute Director James Robinson met in person with Thomas and/or Timothy Pearson to review, discuss, and seek input from them regarding the activities of The Pearson Institute, The Pearson Global Forum, and/or on other matters pursuant to Section 5.1(c) of the Grant Agreement on at least the following approximate dates:

- November 30, 2016
- January 24, 2017
- March 27, 2017

Since the Foundation filed its lawsuit in February 2018, the University has asked on four separate occasions whether the Foundation wishes to hold meetings for the purposes described in Section 5.1(c) of the Grant Agreement while the litigation is pending. During a telephone call between the parties' outside counsel on August 6, 2018, the University's counsel asked the Foundation's counsel whether the Foundation wished to hold Section 5.1(c) meetings while the litigation is pending. The Foundation's counsel stated that they would confer with their clients and let the University know. Having received no response, in an email on October 31, 2018, the University again raised the subject. The Foundation responded almost two months later, on December 28, 2018, but still did not take a position on whether the Foundation wished to hold Section 5.1(c) meetings while the litigation is pending.

The University sent a letter to the Foundation on January 14, 2019, in which it again explained that it remains ready to hold Section 5.1(c) meetings, if the Foundation is interested in attending them. The Foundation responded with a February 28, 2019 letter in which it leveled a number of allegations against the University but did not express an interest in attending a meeting for the purposes described in Section 5.1(c) of the Grant Agreement. On March 6, 2019, the University sent another letter, reiterating that the University is prepared to hold Section 5.1(c) meetings during the litigation for the purposes described in the Grant Agreement. The Foundation has not responded to that letter.

**INTERROGATORY NO. 21:**

Please identify all philanthropic support provided to the Donor, The Pearson Institute, The Pearson Global Forum or any other supporter (for example, any donor advised fund) of the referenced entities by any member of the Advisory Council, the University, the University's faculty, the University's Board of Trustees, the University's administration members or any other donor to or supporter of the University, including the amount(s), date(s), and identity of those making such donation(s).

ANSWER TO INTERROGATORY NO. 21:

The University incorporates its General Objections. The University further objects to the request to identify philanthropic support provided by Advisory Council members, the University, the University's faculty, the University's Board of Trustees, or the University's administration members as irrelevant and overly burdensome given the needs of the case. Advisory Council members, the University, the University's faculty, the University's Board of Trustees, and the University's administration members are not obligated under the terms of the Grant Agreement to provide philanthropic support to the Donor, The Pearson Institute, The Pearson Global Forum, or any supporters of those entities. The University further objects that the term "philanthropic support" is not defined. The University further objects to the request for "the amount(s), date(s), and identity of those making such donation(s)" because that information is confidential, the University does not have permission from donors and/or potential donors to disclose it, and the information is not relevant to the issues in dispute.

Subject to these objections, the University states as follows: The Advisory Council's efforts to support The Pearson Institute and The Pearson Global Forum through advocacy and philanthropy are reflected in the minutes of the Advisory Council meetings on March 27, 2018, June 27, 2018, and December 10, 2018. Pursuant to Federal Rule of Civil Procedure 33(d), minutes from those meetings are being produced herewith at bates numbers UOFC0179145-53. The Advisory Council also discussed its advocacy and philanthropy on behalf of The Pearson Institute and The Pearson Global Forum at its meeting on May 16, 2019. Minutes from that meeting will be produced once they are finalized.

INTERROGATORY NO. 22:

Please identify each and every person who drafted, reviewed, revised, approved, or authorized the footnote found in the March 31, 2017 budget submission, which states that

9

"[a]mounts contributed by Harris Public Policy are subject to reevaluation on an annual basis based on Harris's budget. Inclusion of these contributions in the current year's Pearson Institute and Pearson Forum budget does not preclude charging these costs against the Pearson fund in future annual budgets where otherwise appropriate under the terms of the Amended and Restated Grant Agreement."

### ANSWER TO INTERROGATORY NO. 22:

The University incorporates its General Objections. The University objects to this request because it seeks information protected by the attorney-client privilege or other applicable law, privilege, or immunity. The University further objects to this request, specifically the identification of "each and every person" as unduly burdensome, including because this information will have little bearing on the resolution of the issues to be decided in this case.

Subject to these objections, the University states that the following individuals drafted, revised, approved and/or authorized the footnote in the budget that the University sent to the Pearsons on March 31, 2017: Provost Daniel Diermeier, Senior Associate General Counsel Russell Herron, Senior Director of Finance Mirela Munteanu, and Associate Provost Nichole Nabasny. In addition, other personnel from the University reviewed the 2017-2018 budget for The Pearson Institute and The Pearson Global Forum.

### INTERROGATORY NO. 23:

With respect to the attached Exhibit A, which was posted online by the Chicago Maroon, the first two pages of which appear as a document entitled "Default, Notice, Cure and Termination Timeline", and the third page of which appears as a document entitled, "Meeting to Discuss Options for Pearson Institute", please identify for each of these two documents the drafter of the document, the identity of any individual receiving or reviewing a copy of such document, the date on which the document was created, whose handwriting appears on the first page of Exhibit A, and all steps taken by the University, if any, to demand the Chicago Maroon's return and removal of Exhibit A from the Internet.

### ANSWER TO INTERROGATORY NO. 23:

The University incorporates its General Objections. The University further objects to this request because it seeks information about the documents contained in Exhibit A, which are

protected by the attorney-client privilege and the attorney work-product doctrine. The University further objects to the request because it will have little bearing on the resolution of the issues to be decided in this case.

Subject to these objections, the University states that the document contained within Exhibit A entitled "Default, Notice, Cure and Termination Timeline" was drafted by Senior Associate General Counsel Russell Herron on June 30, 2017. The document was distributed to Provost Daniel Diermeier, Vice President Darren Reisberg, General Counsel Kim Taylor, and Senior Associate General Counsel Elizabeth Shanin. The University does not know whose handwriting appears on the first page of this document.

The document contained within Exhibit A entitled "Meeting to Discuss Options for Pearson Institute" was drafted by Ms. Taylor on June 29, 2017. The following individuals received a copy of this document: President Robert Zimmer, Mr. Diermeier, Mr. Reisberg, Mr. Herron, and Ms. Shanin. In addition, the following individuals received an electronic copy of this document for the sole purpose of printing the document: Susan Huie, Marlena Harmon, Ashley Alvarado, and Mary Pat Rysdon.

Upon learning *The Maroon* had obtained a copy of these privileged documents, two meetings took place with *Maroon* editors Euirim Choi and Adam Thorp. Ms. Taylor attended the meeting that took place on August 3, 2017, and Mr. Herron attended the meeting that took place on August 7, 2017. During both of these meetings, Ms. Taylor and Mr. Herron explained that the two documents contained in Exhibit A are protected by the University's attorney-client privilege and were not voluntarily disclosed by the University. Ms. Taylor and Mr. Herron both requested that *The Maroon* immediately return the documents to the University's Office of Legal Counsel. The University's assertion of privilege and the request that the documents be returned is reflected

in an email sent to the *Maroon* editors on August 7, 2017, produced herewith at bates number UOFC0179154-55. *The Maroon* editors did not return the documents but did not publish them at that time.

After this lawsuit was filed, the University learned in approximately February 2018 from editors of *The Maroon* that they intended to publish the privileged documents. On February 27, 2018, Ms. Shanin attended a meeting with *Maroon* editor Euirim Choi, explained again that the documents were protected by the University's attorney-client privilege, and requested *The Maroon* return the privileged documents. By letter dated February 28, 2018, produced herewith at bates number UOFC0179156, Ms. Taylor reiterated the University's demand that *The Maroon* refrain from publishing the privileged documents or any of their contents, immediately return all physical copies of the documents, and immediately destroy all electronic copies of the documents.

### RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

1. The University objects to the "Instructions for Requests for Production" because those instructions purport to require discovery exceeding the bounds of reasonable and permissible discovery under the Federal Rules of Civil Procedure, the Local Civil Rules of the Northern District of Oklahoma, the Court's orders, or the parties' agreements. In particular:

    a. The University objects to Instruction 1, which seeks "all documents or tangible things in your possession, custody or control of" any "representative or attorney" because that instruction seeks material protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable law, privilege, or immunity.

    b. The University objects to Instruction 3, Instruction 4's procedures for a privilege log, and Instruction 6's definition of "refers and relates" if those instructions prescribe procedures for production different from those agreed upon by the parties as part of an Electronically Stored Information (ESI) protocol.

2. The University objects to each and every request for production that seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable law, privilege, or immunity. The University's responses are not intended to be and should not be construed as a waiver of the attorney-client privilege, the attorney work-product doctrine, or any other applicable law, privilege or immunity.

3. The University responds to each request for production based on present knowledge, information, and belief. The University reserves the right to amend and/or supplement its responses as necessary, including after the completion of document collection and review or after discovery has been completed.

4. The University's objections and responses to Plaintiff's requests for production are not intended to waive or prejudice any objections that the University may assert now or in the future, including, without limitation, objections as to the relevance of the subject matter of any request for production, or to the admissibility of any response at trial.

5. The University's responses to specific requests for production should not be construed to admit Plaintiff's characterizations of any documents, facts, theories, or conclusions.

REQUEST NO. 37:

Please produce all documents relied upon or reviewed in answering the Interrogatories herein.

RESPONSE TO REQUEST NO. 37:

The University incorporates its General Objections. The University objects to this request because it calls for documents protected by the attorney-client privilege, attorney work-product doctrine, or other applicable law, privilege, or immunity. Subject to and without waiving these objections, the University either already has or will produce responsive, non-privileged documents located through a reasonable search.

REQUEST NO. 38:

Please produce all documents relating to the consideration, recruitment, search for, hiring, and resignation of candidates for the Forum Executive Director position, including without limitation documents related to both individuals that have held this title.

RESPONSE TO REQUEST NO. 38:

The University incorporates its General Objections. The University objects to this request as duplicative of Request No. 2 from the Foundation's First Set of Requests for Production. In response to Request No. 2, the University has already conducted a reasonable search for documents relating to the consideration, recruitment, search for, and hiring of candidates for the Forum Executive Director position. The University objects to the extent the request seeks additional documents as unduly burdensome, including because this information will have little bearing on the resolution of the issues to be decided in this case.

REQUEST NO. 39:

Please produce all documents describing or evidencing the expenditure of any and all funds on behalf of The Pearson Institute, including without limitation books and records showing funds expended from The Pearson Institute endowment and other funds the University claims to have expended to support The Pearson Institute.

RESPONSE TO REQUEST NO. 39:

The University incorporates its General Objections. The University objects to this request as overbroad and unduly burdensome, and as vague and ambiguous with respect to the term "documents describing or evidencing the expenditure of . . . funds." The University has already produced annual budgets and annual reports for The Pearson Institute and The Pearson Global Forum, which include detailed information about projected and actual expenditures for The Pearson Institute and The Pearson Global Forum. Complying with this request would appear to require the University to search for and produce, for example, every receipt for every expenditure

incurred by The Pearson Institute or The Pearson Global Forum. The University further objects because this request seeks documents that are not relevant to the issues to be resolved.

### REQUEST NO. 40:

Please produce all documents describing or evidencing travel or research activities of Roger Myerson that were paid for with Pearson Institute funds, including without limitation documents describing the activities and the amounts paid for such activities.

### RESPONSE TO REQUEST NO. 40:

The University incorporates its General Objections. The University objects that this request seeks documents that are not relevant to any issue in dispute.

### REQUEST NO. 41:

Please produce all documents related to the Chicago Maroon's possession of documents regarding this dispute, including without limitation documents regarding the University's investigation into how the Chicago Maroon came to possess those documents, all communications with the Chicago Maroon regarding those documents, and copies of all such documents the University understands the Chicago Maroon to possess.

### RESPONSE TO REQUEST NO. 41:

The University incorporates its General Objections. The University objects to this request because it calls for documents protected by the attorney-client privilege, attorney work-product doctrine, or other applicable law, privilege, or immunity. The University further objects that the requests for "documents regarding the University's investigation into how the Chicago Maroon came to possess the documents" and "copies of all . . . documents the University understands the Chicago Maroon to possess" seek documents that are not relevant to any issue in dispute.

Subject to and without waiving these objections, the University will produce its communications with the Chicago *Maroon* regarding the documents contained within Exhibit A.

Respectfully submitted,

/s/ Faye E. Paul
WILLIAM S. LEACH, OBA# 14892
JESSICA L. DICKERSON, OBA#21500
McAfee & Taft, a Professional Corporation
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone: (918) 587-0000
Facsimile: (918) 599-9317
Email:  bill.leach@mcafeetaft.com
        jessica.dickerson@mcafeetaft.com

Jeffrey A. Hall
Rebecca Weinstein Bacon
Taylor A.R. Meehan
Faye E. Paul
Bartlit Beck LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
Telephone: (312) 494-4400
Facsimile: (312) 494-4440
Email: jeffrey.hall@bartlitbeck.com
       rweinstein.bacon@bartlitbeck.com
       taylor.meehan@bartlitbeck.com
       faye.paul@bartlitbeck.com

Andrew C. Baak
Bartlit Beck LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
Telephone: (303) 592-3100
Facsimile: (303) 592-3140
Email: andrew.baak@bartlitbeck.com

*Counsel for Defendant and Counterclaimant,
The University of Chicago*

## CERTIFICATE OF MAILING

I hereby certify that on this 12th day of June, 2019, I transmitted a copy of the above foregoing document to the following via email and mail, with postage pre-paid, to:

P. Scott Hathaway
Isaac R. Ellis
4000 One Williams Center
Tulsa, Oklahoma 74172
Attorneys for Plaintiffs

/s/ Faye E. Paul
Faye E. Paul
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
t: (312) 494-4400
f: (312) 494-4440
faye.paul@bartlit-beck.com