IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE THOMAS L. PEARSON AND THE PEARSON FAMILY MEMBERS FOUNDATION, | |
| Plaintiff and Counterclaim Defendant, | |
| v. | |
| THE UNIVERSITY OF CHICAGO, | |
| Defendant and Counterclaimant. | |
| AND | No. 18-cv-99-GKF-FHM |
| THE UNIVERSITY OF CHICAGO, | **JURY TRIAL DEMAND** |
| Counterclaimant and Defendant, | |
| v. | |
| THE THOMAS L. PEARSON AND THE PEARSON FAMILY MEMBERS FOUNDATION, | |
| Counterclaim Defendant and Plaintiff, | |
| THOMAS L. PEARSON, | |
| Counterclaim Defendant. | |

**DEFENDANT UNIVERSITY OF CHICAGO'S SECOND AMENDED
COUNTERCLAIM AGAINST THE THOMAS L. PEARSON AND THE
PEARSON FAMILY MEMBERS FOUNDATION AND THOMAS L. PEARSON**

1.     The University of Chicago brings this second amended counterclaim for breach of

contract against The Thomas L. Pearson and the Pearson Family Members Foundation ("the

Foundation") and Thomas L. Pearson, individually.

2.      After many months of negotiations, the Foundation, Mr. Pearson, and the University signed a Grant Agreement on April 3, 2015. The Grant Agreement provided that: (1) the University, through its Harris School of Public Policy, would create The Pearson Institute for the Study and Resolution of Global Conflicts and an Institute program called The Pearson Global Forum; (2) the Foundation would contribute $100 million to the University in nine annual installments beginning in June 2015; and (3) Mr. Pearson would pay any unpaid portion of those installments. *See* Ex. 1, Grant Agreement.

3.      The Grant Agreement provides that the University will use the Foundation's funding to create and operate the Institute and Forum. The Agreement also limits the Foundation's role in the Institute's and Forum's operations. In particular, the Agreement protects the University's academic independence by ensuring the Foundation and the Pearsons would have no role or authority with respect to academic or professional appointments to the Pearson Institute and Forum, the Institute's and Forum's research and topic agendas, and other academic matters related to curriculum.

4.       Since its launch and under the leadership of eminent political scientist and economist James Robinson, the Institute has attracted leading scholars and talented students, funded research aimed at understanding and resolving global conflicts, organized and hosted dozens of events including the inaugural Pearson Global Forum in October 2018, enrolled more than 200 students in courses related to global conflict, and fostered an engaged community of scholars.

5.      From the outset, the Foundation, through Mr. Pearson and his brother Timothy Pearson, has sought a level of involvement and authority in the Institute's operations, including academic matters, in disregard of the Agreement's limits on its role.

6.      The Foundation made the first two installment payments required by the Grant Agreement, for $11 million each in June 2015 and June 2016. In June 2017, however, the Foundation unjustifiably refused to make the required $13 million installment payment, and Mr. Pearson then also unjustifiably refused to make the required payment.

7.      In January and June 2018, the Foundation paid the University $900,000 and $1.3 million, respectively. But in November 2018, the Foundation again unjustifiably refused to pay the remaining $11.7 million of its 2018 installment payment when due, and Mr. Pearson has also unjustifiably refused to make the required 2018 installment payment.

8.      In June 2019, the Foundation paid the University $1 million, but unjustifiably refused to pay the remaining $12 million of its 2019 installment payment when due. Mr. Pearson also unjustifiably refused to make the required 2019 installment payment.

9.      In February 2018, the Foundation brought the present action against the University and asserted that the University had breached the Agreement, as well as other claims.

10.     By failing to pay the full $13 million installment payments due in June 2017, November 2018, and June 2019, the Foundation and Mr. Pearson have breached the Grant Agreement. The University brings this amended counterclaim for recovery of amounts due under the Agreement and all other remedies available at law and equity.

**Parties, Jurisdiction, and Venue**

11.     Plaintiff University of Chicago is a research university incorporated as an Illinois not for profit corporation, with its principal place of business in Chicago, Illinois.

12.     On information and belief, the Foundation is a Delaware nonstock corporation with its principal place of business in Tulsa, Oklahoma.

13.     On information and belief, Thomas Pearson is a citizen of Oklahoma.

3

14.     The University, the Foundation, and Mr. Pearson individually are parties bound by the Grant Agreement.

15.     This Court has subject matter jurisdiction over the University's counterclaim because it is a civil action between citizens of different States and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

16.     This Court has personal jurisdiction over all parties.

17.     Venue in this District is proper, as agreed by the parties in the Grant Agreement. Ex. 1, § 10.4.

18.     New York law governs the parties' disputes arising from the Grant Agreement. Ex. 1, § 10.4.

### The Grant Agreement

19.     At various times in 2014, the University had discussions with Mr. Pearson and his brother Timothy Pearson about a large donation to the University.

20.     In these discussions, the University proposed to use the Pearsons' donation to create an institute at the University's Harris School of Public Policy to study the causes, prevention, and resolution of global conflicts using a quantitative, data-driven approach. The parties also discussed the creation of an outward-looking forum that could bring the research findings of the institute to policy makers.

21.     During this same period, the Harris School, under the new leadership of Daniel Diermeier, was recruiting Harvard professor James Robinson, a preeminent scholar in the field of international economic and political development and co-author of *Why Nations Fail*, a New York Times Bestseller that was also selected as one of the Washington Post's top books of 2012.

22.     After many months of negotiations, the Pearsons' family foundation, the Thomas

L. Pearson and Pearson Family Members Foundation, Thomas Pearson, and the University

executed a Grant Agreement on April 3, 2015, in which the Foundation promised a $100 million

contribution to the University to create The Pearson Institute and The Pearson Global Forum at

the Harris School.

23.     The agreed-upon mission of the Institute and Forum is "to promote ongoing

discussion, understanding and resolution of global conflicts, and to contribute to the

advancement of a global society at peace," including by employing an analytically rigorous,

data-driven approach to understanding violent conflict; engaging students, scholars, and

policymakers through academic courses and other educational programs; promoting the

Institute's findings; and bringing together students, scholars, and policymakers to ensure the

exchange of ideas and to inform policy. Ex. 1, § 1.2.

24.     To facilitate this mission, the Foundation agreed to pay the University $100

million in nine annual installments in accordance with the following schedule:

**Appendix 1**

Grant Payment Schedule

| Due Date | Total Payment | Endowment Portion Range | Expendable Portion Range |
|---|---|---|---|
| 6/30/2015 | **$11,000,000** | $9,750,000- $10,800,000 | $200,000-$1,250,000 |
| 6/30/2016 | **$11,000,000** | $9,900,000-$10,600,000 | $400,000-$1,100,000 |
| 6/30/2017 | **$13,000,000** | $12,100,000-$12,200,000 | $800,000-$900,000 |
| 6/30/2018 | **$13,000,000** | $11,700,000-$12,000,000 | $1,000,000-$1,300,000 |
| 6/30/2019 | **$13,000,000** | $12,000,000-$12,200,000 | $800,000-$1,000,000 |
| 6/30/2020 | **$12,000,000** | $11,400,000-$11,500,000 | $500,000-$600,000 |
| 6/30/2021 | **$11,000,000** | $10,600,000-$10,700,000 | $300,000-$400,000 |
| 6/30/2022 | **$10,000,000** | $9,900,000-$10,000,000 | $0-$100,000 |
| 6/30/2023 | **$6,000,000** | $5,900,000-$6,000,000 | $0-$100,000 |
| **TOTALS** | **$100,000,000** | **$93,250,000-$96,000,000** | **$4,000,000-$6,750,000** |

25.     Thomas Pearson agreed to certain payment obligations under the Agreement. In the event the Foundation fails to pay the University all or any portion of an annual payment, Mr. Pearson must pay the unpaid portion. Ex. 1, § 1.4.

26.     In reliance on the Foundation's and Thomas Pearson's promises in the Grant Agreement, including to contribute funding of $100 million, the University has incurred significant expenses and invested substantial resources to establish and operate the Institute.

27.     The Agreement provides that the Foundation shall make a payment on June 30 of every year beginning in 2015 and ending in 2023, and Mr. Pearson must pay any unpaid portion within 30 days of the Foundation's non-payment. Ex. 1, §§ 1.1, 1.4, App'x 1.

6

28.     Payment may be delayed only if the University is operating under a cure period with respect to a Founding or Maintenance Obligation under the Grant Agreement at the time a payment is due. Ex. 1, § 1.1.

29.     Even if the University is operating under a cure period at the time payment is due, the Foundation's and Mr. Pearson's payment obligations do not cease.

30.     If the Foundation chooses to delay full payment because the University is operating under a cure period, the Foundation or Mr. Pearson must still make a "Current Funding Payment," defined in the Grant Agreement as the lesser of (1) the actual annual operating expenses for the Pearson Institute and Forum or (2) the maximum amount of the "Expendable Portion Range" specified in Appendix 1 of the Grant Agreement for that budget year. Once the University cures such an obligation, the Foundation must pay any remaining amount owed for that budget year within 30 days. Ex. 1, § 1.1.

31.     If the Foundation and Mr. Pearson fail to make any payment required under the Grant Agreement when due, the University may pursue any and all remedies available at law or in equity or may terminate the Agreement if such failures go uncured for 90 days after the University notifies the Foundation of non-payment. Ex. 1, § 6.3.

**The Foundation's and Mr. Pearson's Breaches of the Grant Agreement**

32.     On June 30, 2017, the Foundation failed to pay the $13 million payment due.

33.     On July 1, 2017, the University notified the Foundation and Mr. Pearson individually that the Foundation was in default for failure to pay the June 2017 payment. In that same letter, the University requested that Mr. Pearson personally pay the amount due on or before July 31, 2017, as required by the Grant Agreement.

34.     Thomas Pearson failed to pay the $13 million payment due on June 30, 2017.

35.     On June 30, 2017, the University was not in default or operating in a cure period for any obligation that would permit the Foundation and Mr. Pearson to elect to delay payment of any portion of the 2017 installment payment.

36.     On January 17, 2018, the Foundation made a $900,000 payment to the University.

37.     On June 14, 2018, the Foundation made a $1.3 million payment to the University.

38.     On November 7, 2018, the University notified the Foundation by letter that Professor Roger Myerson would be appointed as the final faculty chair at The Pearson Institute.

39.     On November 8, 2018, the University appointed Professor Myerson as the final faculty chair at The Pearson Institute.

40.     The Foundation's complaint alleges that the University breached the Grant Agreement by not earlier filling the final faculty chair position. The University denies that allegation. But even under the Foundation's theory, the appointment of Professor Myerson timely cured the alleged breach (for which the cure period extended to September 1, 2019). Upon Professor Myerson's appointment, the University was not in default or operating in a cure period for any obligation that would permit the Foundation or Mr. Pearson to elect to delay payment of any portion of the 2018 installment payment.

41.     On November 8, 2018, following Professor Myerson's appointment as a Pearson Institute faculty chair, the Foundation's obligation to make its full 2018 installment payment of $13 million came due.

42.     On December 17, 2018, the University notified the Foundation and Mr. Pearson individually that the Foundation was in default for failure to pay the 2018 installment payment. In that same letter, the University requested that Mr. Pearson personally pay the amount due on or before January 19, 2019, as required by the Grant Agreement.

43.     On June 17, 2019, the Foundation paid only $1 million of the $13 million installment payment due on or before June 30, 2019. On July 17, 2019, the University notified the Foundation and Mr. Pearson individually that the Foundation was in default for failure to pay the full June 2019 payment. In that same letter, the University requested that Mr. Pearson personally pay the amount due on or before August 15, 2019, as required by the Grant Agreement.

44.     Thomas Pearson failed to pay the remaining $12 million due on June 30, 2019.

45.     On June 30, 2019, the University was not in default or operating in a cure period for any obligation that would permit the Foundation and Mr. Pearson to elect to delay payment of any portion of the 2019 installment payment.

46.     Neither the Foundation nor Mr. Pearson has paid the required 2017, 2018, or 2019 installment payments.

## Count I
### (Breach of Contract – 2017 Installment Payment)

47.     The University realleges and incorporates by reference each of the allegations in Paragraphs 1–46 of its amended counterclaim as if fully set forth herein.

48.     The Grant Agreement is valid and enforceable by the University.

49.     The University has performed all required obligations under the Grant Agreement.

50.     Section 1.1 and Appendix 1 of the Agreement required the Foundation to pay an annual installment payment of $13 million on June 30, 2017.

51.     Section 1.4 of the Agreement states that Mr. Pearson must pay any unpaid portion of an installment payment not paid by the Foundation within 30 days of the payment due date.

52.     The Foundation and Mr. Pearson have breached these provisions of the Grant Agreement by failing to pay the $13 million installment payment due on June 30, 2017.

53.     As a result of the Foundation's and Mr. Pearson's breaches, the University has suffered substantial damages, including the loss of the amount owed under the Agreement and lost income to support costs of the Institute as a result of its inability to invest the June 2017 payment.

## Count II
### (Breach of Contract – 2018 Installment Payment)

54.     The University realleges and incorporates by reference each of the allegations in Paragraphs 1–46 of its amended counterclaim as if fully set forth herein.

55.     The Grant Agreement is valid and enforceable by the University.

56.     The University has performed all required obligations under the Grant Agreement.

57.     Section 1.1 and Appendix 1 of the Agreement required the Foundation to pay any unpaid portion of the 2018 annual installment payment of $13 million by December 16, 2018, at the latest.

58.     Section 1.4 of the Agreement states that Mr. Pearson must pay any unpaid portion of an installment payment not paid by the Foundation within 30 days of the payment due date.

59.     The Foundation and Mr. Pearson have breached these provisions of the Grant Agreement by failing to pay the full 2018 installment payment.

60.     As a result of the Foundation's and Mr. Pearson's breaches, the University has suffered substantial damages, including the loss of the amount owed under the Agreement and lost income to support costs of the Institute as a result of its inability to invest the 2018 installment payment.

## Count III
### (Breach of Contract – 2019 Installment Payment)

61.     The University realleges and incorporates by reference each of the allegations in Paragraphs 1–46 of its amended counterclaim as if fully set forth herein.

62.     The Grant Agreement is valid and enforceable by the University.

63.     The University has performed all required obligations under the Grant Agreement.

64.     Section 1.1 and Appendix 1 of the Agreement required the Foundation to pay any unpaid portion of the 2019 installment payment of $13 million by June 30, 2019.

65.     Section 1.4 of the Agreement states that Mr. Pearson must pay any unpaid portion of an installment payment not paid by the Foundation within 30 days of the payment due date.

66.     The Foundation and Mr. Pearson have breached these provisions of the Grant Agreement by failing to pay the full 2019 installment payment.

67.     As a result of the Foundation's and Mr. Pearson's breaches, the University has suffered substantial damages, including the loss of the amount owed under the Agreement and lost income to support costs of the Institute as a result of its inability to invest the 2019 installment payment.

### Prayer for Relief

WHEREFORE, the University respectfully requests the following relief:

A.     Damages in an amount to be proved at trial;

B.     An award of prejudgment and post-judgment interest;

C.     Such other and further relief available at law or in equity as the Court may deem just and proper.

## Jury Demand

The University demands a trial by jury on all such issues so triable.


Dated: August 26, 2019                          Respectfully submitted,

                                                */s/ Jeffrey A. Hall*
                                                Jeffrey A. Hall
                                                Rebecca Weinstein Bacon
                                                Faye E. Paul
                                                Taylor A.R. Meehan
                                                BARTLIT BECK LLP
                                                54 West Hubbard Street, Suite 300
                                                Chicago, Illinois 60654
                                                t: (312) 494-4440
                                                f: (312) 494-4440
                                                jeffrey.hall@bartlit-beck.com
                                                rweinstein.bacon@bartlit-beck.com
                                                faye.paul@bartlit-beck.com
                                                taylor.meehan@bartlit-beck.com

                                                Andrew C. Baak
                                                BARTLIT BECK LLP
                                                1801 Wewatta Street, Suite 1200
                                                Denver, Colorado 80202
                                                t: (303) 592-3100
                                                f: (303) 592-3140
                                                andrew.baak@bartlit-beck.com

                                                        *And*

                                                William S. Leach, OBA #14892
                                                Jessica L. Dickerson, OBA #21500
                                                McAfee & Taft, a Professional Corporation
                                                Williams Center Tower II
                                                Two West Second Street, Suite 1100
                                                Tulsa, Oklahoma 74103
                                                Telephone:     (918) 587-0000
                                                Facsimile:     (918) 599-9317
                                                Email:  bill.leach@mcafeetaft.com
                                                        jessica.dickerson@mcafeetaft.com


                                                *Counsel for Defendant and Counterclaimant,*
                                                *The University of Chicago*

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of August, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registrants:

P. Scott Hathaway
Isaac R. Ellis
4000 One Williams Center
Tulsa, Oklahoma 74172
Attorneys for Plaintiffs


*/s/ Jeffrey A. Hall*
Jeffrey A. Hall