IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

THE THOMAS L. PEARSON AND
THE PEARSON FAMILY MEMBERS FOUNDATION,

      Plaintiff and Counterclaim
      Defendant,

   v.

THE UNIVERSITY OF CHICAGO,

      Defendant and Counterclaimant.

  AND

THE UNIVERSITY OF CHICAGO,

      Counterclaimant and Defendant,

   v.

THE THOMAS L. PEARSON AND
THE PEARSON FAMILY MEMBERS FOUNDATION,

      Counterclaim Defendant and
      Plaintiff,

THOMAS L. PEARSON,

      Counterclaim Defendant.

No. 18-cv-99-GKF-FHM

**THE UNIVERSITY OF CHICAGO'S BRIEF IN OPPOSITION
TO PLAINTIFF'S SECOND MOTION TO COMPEL**

**Introduction**

In its second motion to compel, the Foundation makes a number of unfounded assertions about discovery to date and seeks to enforce increasingly burdensome discovery requests that are unrelated to the parties' claims and defenses.

Although the University has provided extensive discovery over the last year, the Foundation seeks more. But the discovery it now moves to compel is not justified: its requests related to the 2019 Global Forum and the Forum Executive Director are burdensome and irrelevant; it fails to appropriately narrow its overbroad request for information related to the University's websites and other publications; and is improperly using the litigation to gain access to information—details about the Pearson Institute's finances—to which the Foundation and the Pearsons are not entitled under the Grant Agreement.

The University has worked diligently to respond to the Foundation's legitimate requests but has found the Foundation unwilling to accept reasonable compromises to tailor discovery to that which is relevant and proportional to the needs of the case. The motion for additional discovery should be denied.

**Background**

Discovery in this case has now been ongoing for more than a year. Even while responding in good faith to the Foundation's burdensome discovery requests over the last year, the University has simultaneously remained focused on and committed to the success of the Pearson Institute. To put the last year in context, in addition to responding to the Foundation's numerous discovery requests, including about the ongoing activities of the Pearson Institute, the University and the Pearson Institute have also, among other things:

- Hosted the inaugural Pearson Global Forum;

- Appointed Nobel Laureate Roger B. Myerson as the final Pearson-chaired professor;

- Held the third Annual Pearson Lecture, featuring the Head of the Palestinian Mission to the United Kingdom;

- Selected the newest class of Pearson Fellows and Scholar; and

- Planned the second annual Pearson Global Forum, which will be held in Berlin, Germany in October of this year.

Those milestones are in addition to ongoing programming for the Pearson Institute's students, Scholars, and Fellows, all in support of the continued success of the Pearson Institute and its mission. During that same period, the University has also been responsive to the Foundation's significant and ongoing discovery requests—collecting and running search terms against more than five million documents, reviewing hundreds of thousands of documents that hit on those terms, and producing more than 75,000 documents.

Last summer and fall, the Foundation issued and the University responded to 16 interrogatories and 36 document requests, the parties met and conferred about search terms and custodians (now up to 28 for the University), and the University began collecting, searching and reviewing documents. In February, the University began its rolling production of documents.



As illustrated above, the University completed about 75% of its production (roughly 57,500 documents) in May. Between June and August, the University produced about 18,000 additional documents, including:

- In June, about 1,750 documents related to faculty hiring, pursuant to the Court's May 3 Order (Dkt. No. 77).

- In July and August, about 16,000 documents that were slated for production in June but for which the Foundation insisted the University complete a document-by-document confidentiality re-review.[1]

The University expects to complete its production by September 13 (excepting any documents that are the subject of ongoing negotiations between the parties or motion practice before this Court), including producing documents from two custodians the University added at the Foundation's request in May, along with a supplemental privilege log.

Despite having a much smaller production, the Foundation did not begin producing documents until April 18. The Foundation purportedly completed its production in May, but produced 983 documents (about 6% of its production) in June, after the University pointed out that many of its documents did not show redlined edits, as required by the parties' agreed production protocol. The University also recently determined—after reviewing documents

---

[1] In April, the Foundation asked the University to remove the confidentiality designation on a document and also expressed concern about the University's designations more generally. The parties' Stipulated Protective Order contains only one tier of confidentiality protection, so none of the University's designations have limited the Foundation's, including any of Mr. Thomas Pearson's, Mr. Timothy Pearson's, or their counsel's, ability to review confidential documents or to use them in depositions. In May and June, when the Foundation re-raised its concern, the University proposed that the parties address disagreements as to particular documents—or categories of documents—if and when they arose in later stages of discovery. The Foundation rejected that proposal. Rather than involve the Court, the University agreed to re-review its confidentiality designations for all responsive non-privileged documents, including those that were, at the time, slated for production.

produced by a third party—that the Foundation did not produce all of its responsive

communications between Mr. Timothy Pearson and Mr. George Ledwith.[2] The Foundation has

not yet explained why those documents were not produced or when it will supplement its

production to include them.

 Before either party substantially completed its production, the Foundation began issuing

additional discovery. In May, June, and July, the Foundation subpoenaed eight third parties—

including the University's independent student-run newspaper and a former student editor-in-

chief, three independent advisors to the Pearson Institute, and the University's public relations

firm—and issued ten additional interrogatories and 11 more documents requests.

The scope of many of these requests, including the subpoenas, was very broad. The

University's PR firm, for example, responded by producing more than 50,000 documents. In

addition, rather than focusing on reasonable and necessary follow-up to the extensive discovery

already produced, the Foundation's more recent requests covered a host of topics that have long

been known to the Foundation but have minimal, if any, relevance to the issues in dispute.

**Argument**

I.      **Many of the Foundation's Requests Are Unduly Burdensome and Irrelevant—Or
        Only Marginally Relevant—to the Parties' Claims And Defenses**

The Foundation's recent discovery requests seek broad categories of documents

pertaining to issues and topics that, according to the Foundation's own complaint, do not relate

to any alleged breach of the Grant Agreement or the University's duty of good faith and fair

dealing. The Foundation seeks to justify these broad requests—for all documents related to the

ongoing planning of the 2019 Global Forum and the recruitment, hiring, and resignation of the

---

[2] The University hired Mr. Ledwith on a contract basis, on Mr. Pearson's recommendation, to
help with the Pearson Institute.

4

Institute's prior Forum Executive Director—by referencing the well-known principle that the scope of discovery in civil litigation is broad. *See* Mot. at 5-7. The Foundation fails to acknowledge that the Federal Rules place important and mandatory limits on that scope.

### A. Discovery Must Be Relevant to an Actual Claim or Defense and Proportionate to the Needs of the Case

Under Rule 26(b)(1), discovery may reach "any nonprivileged matter that is relevant to any party's claim or defense[.]" Although that scope is broad, it is not without limits. Instead, the scope of the rule is intended to "signal[] to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signal[] to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. P. 26 (Advisory Committee Note, 2000 Amendments).

Courts in this district have repeatedly confirmed that "[t]he mere fact that a plaintiff offers a 'broad theory of the case' does not automatically justify equally broad discovery, 'unless the discovery is relevant to the plaintiff's *actual* claims and defenses.'" *Evans v. Liberty Nat. Life Ins. Co.*, No. 13-CV-0390-CVE-PJC, 2014 WL 3449993, at *2 (N.D. Okla. July 11, 2014) (citing *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1193 (10th Cir. 2009)) (emphasis added); *see also Burlington N. & Santa Fe Ry. Co. v. Han*, No. 14-CV-69-CVE-PJC, 2015 WL 401744, at *3 (N.D. Okla. Jan. 28, 2015). In *Critical Nurse Staffing, Inc. v. Giving Home Health Care, LLC*, No. CV 12-1054 ACT/LFG, 2013 WL 12138872 (D.N.M. July 19, 2013), the court curtailed much of the discovery sought as "impermissibly broad" and admonished the plaintiff that it "should not file suit precipitously and then attempt to exploit the discovery process in order to uncover additional grounds to support the claims." *Id.* at *4 (citing Advisory Committee Notes, 2000 Amendments, Rule 26(b)(1)).

Rule 26(b) also explicitly limits discovery to that which is "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The 2015 amendments that incorporated that proportionality requirement directly into Rule 26(b)(1) were intended to "[r]estor[e] proportionality as an express component of the scope of discovery," thereby preventing over-discovery and the use of discovery "for delay or oppression." Fed. R. Civ. P. 26 (Advisory Committee Note, 2015 Amendments).

In sum, Rule 26 "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010). The Foundation's own cases, cited in its motion, similarly recognize that under Rule 26, discovery should be appropriately tailored to the parties' actual, pled claims and defenses. *See McConnell v. Canadian Pac. Realty Co*., 280 F.R.D. 188, 193 (M.D. Pa. 2011) (restricting property inspection in ADA case to "those ADA considerations which the plaintiff . . . has standing to pursue"); *Reibert v. CSAA Fire & Casualty Ins. Co*., Case No. 17-CV-350-CVE-JFJ, 2018 WL 279348, *3-4 (N.D. Okla. Jan. 3, 2018) (discussing the importance of the 2015 proportionality amendments to Rule 26 and noting that "[t]he fact that a plaintiff has a 'broad theory of the case' does not automatically justify broad discovery"); *Dotson v. Experian Info. Sols., Inc*., No. CIV-17-575-D, 2019 WL 440588, at *5 (W.D. Okla. Feb. 4, 2019) (restricting broad requests because "[t]he focus for the Court is on the actual claims and defenses involved in the action").

The Foundation's recent discovery includes broad and burdensome requests for documents and information that, according to the Foundation's own complaint, do not relate to any alleged breaches of the Grant Agreement or underlie the Foundation's good faith and fair dealing claim.

**B.    The Ongoing Planning of the 2019 Pearson Global Forum Is Extensive and Documents Related Thereto Are Not Relevant**

The Foundation seeks to compel the University to produce all documents related to the planning of the upcoming 2019 Pearson Global Forum. Mot. at 12-14. The Foundation's only claim related to the Pearson Global Forum is that the University anticipatorily repudiated its obligation to hold the Global Forum in *2018*. *See* Dkt. No. 2, ¶¶ 35-39. For the Foundation to prove that claim, it must establish that the University made an "unequivocal" statement that it would not perform its obligations with respect to the Forum. *Norcon Power Partners, L.P. v. Niagra Mohawk Power Corp*., 92 N.Y.2d 458, 463 (N.Y. 1998); *see DeLorenzo v. Bac Agency, Inc*., 256 A.D.2d 906, 908 (N.Y. App. Div. 3d Dep't 1998) (requiring "an unqualified and clear refusal to perform"). Not only was there no such "unequivocal" statement here, the University planned and hosted the inaugural Forum last October, as the Foundation now concedes. *See* Mot. at 13.

The planning for the *2019* Global Forum is in its final stages. It is scheduled to be held this October in Berlin, Germany, and will coincide with the 30th anniversary of the fall of the Berlin wall. It has involved many months of coordinated planning by a broad group that includes the Institute's faculty, staff, and external advisors, other University employees, and an outside public relations firm. Given the extensive planning and number of people involved, the Foundation's request would likely require the University to collect, review, and produce tens of thousands of additional documents unrelated to the claims in the Foundation's complaint.[3]

---

[3] The request would also potentially require the University to repeatedly re-collect documents because the planning of the 2019 Forum is ongoing and will continue right up until the event is held on October 18-19.

Such burdensome discovery about the upcoming 2019 Global Forum is not proportional to the needs of the case, especially when the Foundation has not met its burden to establish its relevance. *Barton v. Tomacek*, No. 11-CV-0619-CVE-TLW, 2012 WL 4735927, at *4 (N.D. Okla. Oct. 3, 2012) ("When the relevance [of requested discovery] is not readily apparent, the party seeking the discovery has the burden to show the relevance of the information requested."). As explained above, the Foundation has no remaining viable claim for anticipatory repudiation related to the 2018 Forum, let alone a claim about the adequacy of the 2019 Forum, which has not yet occurred.

The Foundation argues that discovery into the planning of the 2019 Forum is somehow tangentially relevant to whether the 2018 Forum, held almost a year ago, complied with the University's obligations under the Grant Agreement. *See* Mot. at 13. The Foundation already has documents related to the planning of the 2018 Forum and video footage of the entire event, and sent its representative to attend the event in person. In light of that fulsome discovery, the Foundation's burdensome request for additional documents related to the 2019 Forum is not justified. More importantly, the Foundation's suggestion that the planning of the 2018 Global Forum somehow constituted a breach of the Grant Agreement is entirely absent from the Foundation's complaint. The Foundation's request for all documents related to the planning of the 2019 Global Forum should be denied.

### C.   Documents Related to the Search for, Hiring, and Resignation of the Forum Executive Director are Not Relevant to Any Claims or Defenses

The Foundation also broadly requests all documents related to the search for and hiring of the two individuals who have held the title of Forum Executive Director, as well as documents relating to the resignation of the Pearson Institute's first Forum Executive Director. As with its request for documents related to the 2019 Forum, the Foundation has never alleged that the

University's selection of either Forum Executive Director breached the Grant Agreement or the University's duty of good faith and fair dealing. In fact, the Forum Executive Director role is not mentioned even once in the Foundation's complaint. *See generally* Dkt. No. 2.

When the Foundation issued an overlapping request back in June 2018 for all documents related to eight different positions at the Pearson Institute, the University objected that the request was overbroad and unduly burdensome but ultimately agreed to review and produce documents responsive to the request. *See* Ex. 1, Plaintiffs First Set of Interrogatories and Requests for Production of Documents. That collection and review was completed alongside the University's broader collection, search, and review of documents. The documents the Foundation seeks now, related to the University's recent hires, would require the University to re-collect documents from numerous custodians, apply new search terms, and review a likely significant number of documents.

That burden is simply not proportional in view of the minimal relevance to the parties' contractual dispute. The Court should prevent that kind of "speculative 'fishing expedition[],' whereby a party 'pleads its allegations in entirely indefinite terms, without in fact knowing of any specific wrongdoing by the defendant, and then bases massive discovery requests upon those nebulous allegations, in the hope of finding particular evidence of wrongdoing.'" *Reibert*, 2018 WL 279348 at *4. That is especially true here where the Foundation has not even pled allegations that would encompass the requested discovery.

II.    **The University Should Not Be Compelled to Produce More Information About Changes to the Pearson Institute Website and Institute Director Robinson's Title Than It Has Already Agreed to Provide**

With its motion, the Foundation has narrowed Interrogatory 17 from what was an extremely broad interrogatory[4] to a request for information about changes to Institute Director Robinson's titles on the Pearson Institute website and unspecified "other publications and websites." Mot. at 8.

As the Foundation now acknowledges and as its own produced documents demonstrate, it already has much of the information it is seeking from the University. *See* Mot. at 8; Ex. 3, PEARSON_011774 (containing a list of changes to three different pages of the Pearson Institute website and multiple versions of each page from different points in time). The University has also already provided documents responsive to the Foundation's original Request 2 for "all documents . . . relating to the . . . change in title to . . . Institute Director[.]" Ex. 1, Plaintiffs First Set of Interrogatories and Requests for Production of Documents.

In addition, after receiving the Foundation's narrowed request (by way of its motion), the University produced to the Foundation a list of the dates on which changes were made, and by whom, to the following pages of the Pearson Institute website: (1) Leadership (Ex. 4), (2) Faculty (Ex. 5), and (3) Mission (Ex. 6). These pages have collectively been changed more than 180 times. The only way to identify whether any given change relates to Institute Director

---

[4] Originally, the Foundation requested "each and every change or modification made" from 2014 to present to three University websites, and any "press release(s), media information kit(s), . . . or any other publication relating or referring to" any of six topics. Dkt. 78-3, Ex. C to Mot. at Interr. 17. Many of the topics—such as changes to the titles of Professors Blattman, Dube, and Myerson, and the mission of the Pearson Institute—were not related to the issues in dispute. Although the University offered "to meet and confer regarding a narrowed request," *id.*, the Foundation refused, claiming it could not "readily determine a way to narrow it while still obtaining the necessary information." Ex. 2, 8/6/19 Hathaway email.

Robinson's title is to do a line-by-line comparison of each version to the prior one. The benefit of such an exercise appears minimal, when the Foundation has already done so itself. *See* Ex. 3. But, as the University stated when the parties conferred about this request, it is willing to produce old versions of these webpages, if the Foundation proposes a reasonably narrowed date range.

The only aspect of the narrowed request that the University has not already responded or agreed to respond to is the request for information about changes to Institute Director Robinson's title in unspecified "other publications and websites." Mot. at 8. The Foundation has refused to clarify what constitutes such other publications and websites. Instead, in its motion, the Foundation speculates that there are "likely many more such instances" of the University allegedly failing to act forthrightly. *Id.* at 9. This is exactly the type of fishing expedition based on nebulous—and unpled—allegations that Rule 26 prohibits. For these reasons, there is no basis for the Foundation to seek further discovery beyond what the University has already offered in response to Interrogatory 17.

## III.   The Foundation Is Not Entitled to Audit the Pearson Institute's Expenditures

Request 39 seeks documentation of "the expenditure of *any and all funds* on behalf of the Pearson Institute." Mot. at 11 (emphasis added). With this request, the Foundation seeks a general ledger for the Pearson Institute that includes a line item for each and every expenditure of the Pearson Institute, regardless of size, from its inception through today. *Id*. This request goes well beyond the Foundation's allegations and the terms of the Grant Agreement.

The Foundation contends that this request is justified because of its allegations regarding a single footnote to the 2017-2018 Pearson Institute budget. Mot. at 12 (citing Dkt. No. 2 at ¶¶ 42-44). That allegation—misdescribing the budget to state that the University had the right to charge the Pearson Institute for "many millions of dollars" of general Harris School operating

expenses, Dkt. No. 2 at ¶ 42—is refuted by the detailed budgets themselves, which the University has already provided to the Foundation and which include line-by-line year-end variance against each year's budget. None of the budgets reflects that the University has charged to the Pearson Institute expenses unrelated to the Pearson Institute. In fact, they reflect the opposite—that the Harris School has contributed significant amounts annually to the Pearson Institute. *See, e.g.,* Ex. 7, 2017-2018 Annual Report at Part 2.

The Foundation has not adequately justified its broad request for evidence about each and every expenditure since 2015.[5] The Court long ago dismissed the Foundation's claim for breach of fiduciary duty. *See* Dkt. No. 46 at 19-22. And the University continues to provide detailed annual budgets to the Foundation. The Foundation should not be allowed to use the litigation to circumvent its proper role under the Grant Agreement and engage in a generalized fishing expedition into the Pearson Institute's finances.

## IV.    The University Does Not Object to the Parties Completing Their Document Productions By September 13

The University does not object to completing its production of documents responsive to the Foundation's requests by September 13 (excepting any requests that are the subject of ongoing negotiations between the parties or motion practice before this Court), if the Foundation is obligated to do the same.

Conclusion

For the foregoing reasons, the University respectfully requests that the Court (1) deny the Foundation's motion to compel documents related to the 2019 Pearson Global Forum, Forum Executive Director, the Institute Director's title, and Pearson Institute expenditures; and (2) grant

---

[5] The request would also potentially require the University to continually update the ledger, since the expenditures of the Pearson Institute are ongoing.

the request to require completion of both parties' document production by September 13 (excepting any documents subject to ongoing negotiations between the parties or to motion practice before this Court).

Dated: September 6, 2019

Respectfully submitted,

_/s/_ Jeffrey A. Hall

WILLIAM S. LEACH, OBA#14892
JESSICA L. DICKERSON, OBA#21500
McAfee & Taft, a Professional Corporation
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone: (918) 587-0000
Facsimile: (918) 599-9317
Email:  bill.leach@mcafeetaft.com
   jessica.dickerson@mcafeetaft.com

Jeffrey A. Hall
Rebecca Weinstein Bacon
Faye E. Paul
Taylor A.R. Meehan
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
t: (312) 494-4400
f: (312) 494-4440
jeffrey.hall@bartlit-beck.com
rweinstein.bacon@bartlit-beck.com
faye.paul@bartlit-beck.com
taylor.meehan@bartlit-beck.com

Andrew C. Baak
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
t: (303) 592-3100
f: (303) 592-3140
andrew.baak@bartlit-beck.com

*Counsel for Defendant and Counterclaimant,
The University of Chicago*

**<u>CERTIFICATE OF SERVICE</u>**

   I hereby certify that on this 6th day of September, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registrants:

P. Scott Hathaway
Isaac R. Ellis
4000 One Williams Center
Tulsa, Oklahoma 74172
Attorneys for Plaintiffs

          */s/* Jeffrey A. Hall
          Jeffrey A. Hall