**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **THE THOMAS L. PEARSON AND PEARSON FAMILY FOUNDATION,** | |
| **Plaintiff and Counterclaim Defendant,** | **Case No. 18-99-JWB** |
| **v.** | |
| **THE UNIVERSITY OF CHICAGO,** | |
| **Defendant and Counterclaim Plaintiff.** | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the court on the University of Chicago's supplemental motion for partial summary judgment. (Doc. 401.) The motion is fully briefed. (Docs. 404, 413.) Plaintiff moves to file a surreply (Doc. 414), which the University opposes. (Doc. 415.) The parties also have multiple *Daubert* motions. (Docs. 375, 378, 379, 395, 402.) These motions are either fully briefed or ripe for review because the time for responsive briefing has passed. Plaintiff also moves to strike a supplemental brief filed by the University (Doc. 422), and that motion is fully briefed. (Docs. 423, 424.)

The court GRANTS the motion for partial summary judgment (Doc. 401) and DENIES the motion to file a surreply (Doc. 414) for the reasons stated herein. The court GRANTS IN PART and DENIES IN PART the motions to exclude the testimony of Wazzan, Campbell, Lakin, and Shamos (Docs. 378, 379, 402), and DENIES the motion to exclude the testimony of Shepard and Shapiro (Docs. 375, 395.). Finally, the court GRANTS the motion to strike (Doc. 422) for failure to comply with a court order.

## I.      Background

The court has set forth the factual background and early procedural history of this case in detail in a prior order.  (Doc. 110.)  Hence the court recounts only the necessary facts for deciding the current motions.  The facts below come from either this court's prior order or the parties' updated submissions.  Additional facts from these sources will also be included in the analysis.

Plaintiff and Counterclaim Defendant, The Thomas L. Pearson and The Pearson Family Members Foundation (the "Foundation") committed to donating $100 million to Defendant and Counterclaim Plaintiff the University of Chicago in exchange for the University creating and operating The Pearson Institute for the Study and Resolution of Global Conflicts ("TPI") and an annual conference called The Pearson Global Forum (the "Pearson Forum").  (Doc. 360 at 1–2.)  In establishing TPI, the University was to establish three named professorships.  (Doc. 401 ¶ 1 (citing Doc. 6 § 3.4).)[1]  Plaintiff alleges that two professors hired were unqualified.  (Doc. 110 ¶¶ 31–35.)

In a prior order, the court denied in part the University's motion for partial summary judgment.  (*Id.* at 62.)  As relevant here, the court denied the University summary judgment on Plaintiff's breach of contract claim for hiring two unqualified endowed faculty chairs.  (*Id.* at 42–44.)  The University had moved for summary judgment on the claim because the Grant Agreement contained a provision stating that Plaintiff had no "role or authority with respect to making appointments (academic or professional) to the Pearson Institute or the Pearson Forum, setting the research agenda of the Pearson Institute, or the selection of topics or presenters for the Pearson Forum."  (*Id.* 43–44.)  But the court held that, while the Grant Agreement was silent as to what

---

[1]   Plaintiff purports to dispute this fact, but it does not explain its position.  Plaintiff may be referring to the fact that the Institute Director was to concurrently be a named professor, bringing the total named professorships to four.  *See* (Doc. 6 § 3.2.)  This distinction does not matter for purposes of the present motion.

precise qualifications the faculty chairs must possess, Plaintiff could challenge as a breach of the Grant Agreement faculty appointment that failed to advance TPI's mission "to promote ongoing discussion, understanding and resolution of global conflicts, and to contribute to the advancement of a global society at peace." (*Id.* at 44.) The court also denied without prejudice all the then-pending *Daubert* motions because the court's order made many potentially moot. (*Id.* at 1 n.1.)

The court later granted the University leave to move for summary judgment on the faculty qualifications claim based on the standard articulated in the court's order. (Doc. 394.) That motion is now fully briefed. (Docs. 401, 404, 413.) The parties have also filed new *Daubert* motions, and Plaintiff moves to strike the University's supplemental authority briefing. (Docs. 375, 378, 379, 395, 402, 422.)

## II.     Standard

Summary judgment is appropriate if the record establishes that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52. In applying this standard, courts must view the evidence and all reasonable inferences from it in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587.

### III.    Analysis

The court first addresses the partial motion for summary judgment and motion for a surreply.

### A.  Motion for Summary Judgment & Surreply—Faculty Qualifications

Plaintiff moves for leave to file a surreply.  (Doc. 414.)  The University opposes.  (Doc. 415.)  Plaintiff argues a surreply is necessary because the University claims (1) that Plaintiff is trying to convert an express contract claim into a good faith claim, (2) that judicial estoppel precludes Plaintiff from making a good faith claim, (3) that the faculty hiring claim can't be based on discovery disclosures and that the claim would be duplicative, and (4) that Plaintiff's claim for the breach of the duty of good faith and fair dealing is futile.  (Doc. 414 at 3.)  Plaintiff also takes issue with the University attaching four new exhibits to its reply.  (*Id.*)

"Supplemental briefs are not encouraged and may be filed only upon motion and leave of Court."  N.D. Okla. Civ. R. 7-1(f).  "[W]hen a moving party uses their reply to present new material—*i.e.*, new evidence or new legal arguments—and if the court *relies* on that new material, it should give the nonmoving party an opportunity to respond."  *James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 903 (D. Kan. 2021).  But "[a] reply which merely responds to matters placed in issue by the response, and 'does not spring upon the opposing party new reasons for the entry of summary judgment' is entirely proper."  *Carter v. Spirit AeroSystems, Inc.*, No. 16-01350-EFM, 2019 WL 3732684, at *12 (D. Kan. Aug. 8, 2019) (alteration in original) (citation omitted), *aff'd*, 827 F. App'x 864 (10th Cir. 2020).  For instance, pointing out in a reply that a response does not conform to the rules of Civil Procedure is acceptable.  *Id.*

Plaintiff's argument is specious.  The University moved for summary judgment on a breach of contract claim, Plaintiff argued that the claim is better understood as a breach of the implied

duty of good faith and fair dealing (in tension with its previous summary judgment briefing), and the University replied saying that construing the claim like that is futile and would violate procedural rules and New York substantive law.  The University also attached exhibits to its reply in support of its responses to Plaintiff's statements of additional facts.  The University's reply was proper, and the court denies the motion for a sur-reply.

Defendant moves for summary judgment on the faculty qualifications breach of contract claim by arguing, based on this court's prior ruling, that the "[u]ndisputed facts establish that no reasonable jury could find that the appointees, Professor Blattman and Professor Dube, were 'so unqualified that they fail to advance, or even frustrate, TPI's stated mission[.]'" (Doc. 401 at 14 (citation omitted).)  Plaintiff responds by arguing that Defendant is misconstruing its claim—that discovery has shown that Plaintiff's claim is a faculty-hiring claim regarding the University violating its own procedures in hiring faculty for the chaired professorships.  (Doc. 404 at 12–13.)  In sum, Plaintiff requests "that the Court deny [the University's] motion for summary judgment on the faculty-hiring portion of Plaintiffs' claim for breach of implied covenant of good faith and fair dealing."  (*Id.* at 20.)  The University argues in reply, among other things, that Plaintiff is inappropriately shifting its express breach of contract claim to one it never pleaded—an implied good faith and fair dealing claim.  (Doc. 413 at 4, 11.)  Moreover, Plaintiff can't make a good faith and fair dealing claim based on the faculty-appointment process because it would contravene an express provision of the agreement, which states that Plaintiff has no authority with respect to making appointments.  (*Id.* at 5.)

Plaintiff alleged a breach of contract claim in its amended complaint.  (Doc. 110 ¶¶ 31–35.)  Based on Plaintiff's summary judgment briefing, the court grants the University summary judgment because Plaintiff has abandoned its express breach of contract claim regarding faculty

qualifications.  However, Plaintiff still has a good faith and fair dealing claim as to the faculty selection process.  The court analyzes why the good faith and fair dealing claim remains in more detail in the context of the *Daubert* motions below, but in short, this claim was included in Plaintiff's amended complaint.  *See* (Doc. 110 ¶¶ 31–35, 71.)  The University never sought summary judgment on that claim.  And Plaintiff's good faith claim attacks the process used to select the professors in question, not the professors' qualifications.  The express contract provision denying Plaintiff any role or authority respecting appointments precludes Plaintiff from deciding *who* was selected to the named professorships, but the provision does not preclude Plaintiff's ability to challenge the process by which the University carried out its hiring obligations.  The good faith claim thus remains in the case.

### B.  *Daubert* Motions

Federal Rule of Evidence 702, which controls the admission of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The proponent of expert testimony bears the burden of showing the expert testimony is admissible.  *Hampton v. Utah Dep't of Corr.*, 87 F.4th 1183, 1201 (10th Cir. 2023).  After determining an expert is qualified, "the district court must satisfy itself that the testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess

such testimony." *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282 (10th Cir. 2018) (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (citation omitted). "But the rejection of expert testimony is the exception rather than the rule." *Laber v. Austin*, 643 F. Supp. 3d 1242, 1246 (D. Kan. 2022).

"The court has discretion to determine how to perform its gatekeeping function under *Daubert*." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1164869, at *3 (D. Kan. Mar. 10, 2020) (citing *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019)). The most common method of fulfilling that role is by conducting a *Daubert* hearing, "although such a process is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The district court may satisfy its gatekeeping role without a formal *Daubert* hearing "so long as the court has sufficient evidence to perform 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Id.* (quoting *Daubert*, 509 U.S. at 597). "[D]istrict courts are authorized by Fed. R. Civ. P. 78 to provide by local rule for disposition of most motions without oral argument . . . ." *Riddle v. Mondragon*, 83 F.3d 1197, 1208 (10th Cir. 1996). The Northern District of Oklahoma has such a rule. *See* N.D. Okla. Civ. R. 78-1.

The parties have filed multiple motions to exclude opposing experts. In this instance, both sides do not generally request a *Daubert* hearing, but Plaintiff has requested a hearing should the court be inclined to not rule in its favor in some instances. (Docs. 387, 389.) The court evaluates the motions without a *Daubert* hearing because the nature of the opinions expressed and the

materials cited in the briefs are sufficient for the court to determine admissibility.  *Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 664 (10th Cir. 2013) (holding district court permissibly exercised its discretion in ruling without a formal *Daubert* hearing).  The court addresses the motions in reverse chronological order.  Because the parties generally do not challenge the experts' qualifications, the court primarily focuses on the reliability and relevance of the expert evidence.

### 1. Shamos

The University moves to exclude the expert testimony of Dr. Michael Shamos.  (Doc. 402.)  Plaintiff did not file an opposition to this renewed motion to exclude.[2]  The University argues that (1) Shamos's testimony should be excluded because it is irrelevant if the court grants its renewed motion for summary judgment on faculty qualifications; (2) Shamos does not opine on the faculty qualifications standard previously announced by the court; (3) Shamos's use of University guidelines and standards from American academia is inconsistent with New York law; and (4) Shamos's interpretation of the Grant Agreement is inadmissible.  (*Id.* at 7–11.)

"Under New York law, the implied covenant of good faith and fair dealing inheres in every contract."  *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994) (citation omitted).  "Even when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith."  *Id.*  And "[a] party certainly cannot succeed on claims for both breach of an express contract term and breach of the implied covenant based on the same facts . . . ."  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 206 (2d Cir. 2018).  But when "there is a dispute over the meaning of the contract's

---

[2]   It is unclear to the court why Plaintiff did not file an opposition to the current motion when it had previously opposed the motion filed prior to this court's rulings on motions to seal.  (Doc. 388.)  The court proceeds to rule on the current motion mindful of Plaintiff's prior arguments.

express terms, there is no reason to bar a plaintiff from pursuing both types of claims in the alternative." *Id.*

Shamos's testimony centers on whether the University violated its own policies and general American academic standards in selecting Blattman and Dube as endowed full professors when they ordinarily would be too junior for such positions. (Doc. 409 ¶¶ 15, 110.) Addressing the University's first argument, Shamos's testimony is not necessarily irrelevant to the case because Plaintiff pleaded a breach of the duty of good faith and fair dealing regarding faculty appointments in the alternative to its breach of contract claim. *See* (Doc. 110 ¶¶ 31–35, 71 ("In carrying out its obligations under the Grant Agreement, the [University] was, in many instances, charged with discretion based upon its expertise as an academic institution. The [University] failed to exercise that discretion in good faith in numerous instances.").) The University oversimplifies the truism that breach of contract and breach of the duty of good faith claims are duplicative. As one court explained it:

> [A] complaint cannot allege that the defendant breached the contract by failing to pay the $500 promised and breached the implied duty by failing to pay the $500. It may, however, allege that the defendant breached the contract by breaching the express term of payment of $500 or, alternatively, by acting with bad faith in paying after the date on which the money was implicitly understood to be needed.

*Hosp. Auth. of Rockdale Cnty. v. GS Cap. Partners V Fund, L.P.*, No. 09 CIV 8716 PAC, 2011 WL 182066, at *4 (S.D.N.Y. Jan. 20, 2011). Plaintiff's alternative allegations on this issue were appropriate—granting summary judgment on the breach of contract claim does not remove the breach of an implied duty of good faith for this claim.

Second, the University's appeal to the standard articulated by the court in ruling on a motion for summary judgment on Plaintiff's breach of contract claim is of little relevance. The process-related testimony is relevant to a good faith claim because it goes to whether the University

acted with proper motive.  *See Travellers Int'l, A.G.*, 41 F.3d at 1577 (affirming the district court's holding that the defendant had not acted in good faith but had instead been influenced by an improper motive).

Turning to the University's remaining arguments, the University argues that appeals to the University's own hiring guidelines and those in academia more generally are inappropriate because the relationship between the parties is contractually defined.  But that argument ignores that the Grant Agreement is largely silent as to the faculty selection process.  And in determining whether the University selected faculty in good faith, references to standards outside the contract may be necessary to show the reasonable expectations of the parties.  And finally, the University argues for exclusion of Shamos's interpretation of the Grant Agreement.  The court agrees in part—it would be inappropriate for Shamos to give a bald legal conclusion that the University violated express Grant Agreement provisions in making its faculty selections.  The court has granted summary judgment for the University on Plaintiff's express breach of contract claim for faculty selection.  But Shamos is qualified to make statements about the appropriateness of outside standards in the context of faculty selection and such opinions have a sufficient factual basis to be reliable.  The court therefore denies the motion to exclude Shamos's expert testimony, except that he may not opine that the faculty selection breached express contract provisions.

### 2.  Shapiro

Dr. Shapiro's report challenges Shamos's contention that that there is a generalized standard governing promotion to full professor.  (Doc. 395-2 ¶ 11.)  Plaintiff argues for exclusion based on (1) Shapiro having an interest in the lawsuit—writing recommendation letters for Dube and Blattman and being personally acquainted with them, (2) Shapiro having personal knowledge of Plaintiff's other claims, (3) Shapiro having been previously recruited to work at the University

of Chicago, (4) Shapiro's father being a long-time University of Chicago faculty member, (5) Shapiro having co-taught a class at TPI, and (6) Shapiro having received and hopes of continuing to receive funds from TPI.  (Doc. 395 at 2–4.)  Plaintiff further argues that even if Shapiro's testimony is admissible under Rule 702, it is inadmissible under Rule 403 because hybrid fact-expert witnesses have, *inter alia*, reduced reliability and a high risk of juror confusion.  (*Id.* at 5–8.)

"[A] witness may testify as both a fact and expert witness."  *United States v. McGirr*, 660 F. App'x 685, 690 (10th Cir. 2016) (citation omitted).  And expert witnesses much more intimately involved with the underlying facts of the case have been permitted in the Tenth Circuit.  *See, e.g.*, *Brownlee v. Gay & Taylor, Inc.*, 861 F.2d 1222, 1224–25 (10th Cir. 1988) (stating regional vice president for the defendant was a qualified expert).  Notably, Plaintiff relies on precious little in-circuit authority on this procedural issue.  And Plaintiff's most on-point case merely notes that "some circuits have encouraged district courts to take precautionary measures, including warning the jury about the witness's dual roles or bifurcating the questioning to clearly demarcate lay and expert testimony offered by the same witness . . . ."  *United States v. Sandoval*, 680 F. App'x 713, 718 (10th Cir. 2017).  Should Shapiro need to give fact testimony, it appears that Plaintiff's concerns can be readily addressed with cross examination and precautions short of exclusion.  The University has met its burden for now.  Plaintiff's motion to exclude on the above grounds is denied.

### 3.  Wazzan and Campbell

The University moves to exclude expert testimony by Drs. C. Paul Wazzan and Thomas Campbell.  (Doc. 379.)  Plaintiff opposes.  (Doc. 387.)  Because Campbell's testimony will be based on Wazzan's, the court addresses Wazzan's expert report first.

Wazzan's expert report opines on three things:

a.  Whether the original operating budget for TPI and [the Pearson Forum] included as Exhibit D to the Grant Agreement dated April 3, 2015 provided complete and accurate budget information; and
b.  What would happen to the original $100 million grant if [the University] "clawed back" the contributions made by The Harris School in order to fund TPI and [the Pearson Forum], and what would happen to the original $100 million grant if The Harris School transferred costs to The Pearson Fund.
c.  I have also been asked by counsel, for illustrative purposes, to project the operating budget for TPI and [the Pearson Forum] out an additional 15 years under certain reasonable assumptions to show what would likely happen to the endowment under a scenario where the UC-funded costs are transferred to The Pearson Fund.

(Doc. 379-1 ¶ 11.)  The University argues that the opinion as to the 2015 operating budget should be excluded because the court rejected at summary judgment that the University had to disclose Harris School contributions.  (Doc. 379 at 9.)  Plaintiff responds by arguing that Wazzan's opinion that the budget was misleading is not dependent on contract interpretation and the opinion is relevant to Plaintiff's remaining claims for fraudulent inducement and breach of the duty of good faith and fair dealing.  (Doc. 387 at 5–7.)

Here, while the court did strike Plaintiff's claim asserting there was a breach of contract for failure to include all sources of funding in the preliminary operating budget, (Doc. 360 at 22–32), it also denied the University summary judgment on Plaintiff's fraudulent inducement claim.  (*Id.* at 50–53.)  In so holding, the court held that the fraudulent inducement claim was not duplicative of a breach of contract claim because the University was not obligated under the contract to provide the total costs necessary to run TPI.  (*Id.* at 52.)  Therefore, Wazzan's opinion about the original operating budget is not necessarily contrary to this court's prior ruling, and the opinion could be relevant to the fraudulent inducement claim in particular.

The University further argues that Wazzan's 2015 budget opinions lack foundation in certain instances because Wazzan concludes the 2015 budget is misleading due to discrepancies

between the 2015 and the 2017 budgets, but he does not analyze the reasons for the differences. (Doc. 379 at 10.) The University asserts that there are "countless" reasons why amounts change in preliminary budgets. (*Id.*) Maybe so. But what the University has identified is an avenue for cross-examination rather than lack of sufficient factual basis under Federal Rule of Evidence 702. Plaintiff has shown that sufficient facts support Wazzan's opinion as to his first assigned task— whether the 2015 operating budget provided complete information. The court denies the motion to exclude Wazzan's testimony on this point.

The University also moves to exclude Wazzan's opinion as to his second and third tasks by arguing that these opinions are based on an interpretation of a 2017 budget footnote that the court rejected at summary judgment, hypothetical future University action, and speculative budget forecasts. (Doc. 379 at 13.) Plaintiff acknowledges that the court has interpreted the footnote as only allowing a reduction in University support for TPI if the Pearson Fund could adequately cover additional future costs. (Doc. 387 at 10.) But Plaintiff argues that exclusion of this portion of Wazzan's opinion goes too far because the calculations still show that TPI is reliant on additional University funding and this fact is relevant to its claims. (*Id.* at 10–13.)

An expert opinion must have sufficient factual underpinnings to help a jury. *See Buckley v. Deloitte & Touche USA LLP*, 888 F. Supp. 2d 404, 413–14 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 62 (2d Cir. 2013). Here, the rejected "clawback" and cease-to-fund interpretations permeate the second and third topics of Wazzan's opinion. *See, e.g.*, Doc. 379-1 ¶ 39 ("I have been asked by counsel to assume that compensation, student support, and research support costs covered by the Harris School as shown in the budget could be discontinued and even "clawed back" in any given year."); *id.* ¶ 48 ("I performed a series of calculations to determine what would happen to the original $100 million grant if UC 'clawed back' the contributions made by The Harris School in

order to establish and operate TPI and [the Pearson Forum]."); *id.* ¶ 58 ("In this scenario, I assume that the endowment yield generated is based on the adjusted endowment balance, which is lowered by the claw backs, instead of relying on the original endowment yield figures as provided in the April 2017 budget."). Further, Plaintiff argues at length that, in general, experts can form opinions off assumptions. (Doc. 381 at 12–13.) But Plaintiff fails to show that a rejected theory of liability can form the basis of an expert opinion at trial. Nor does Plaintiff provide a basis for this court to find that there is nevertheless a sufficient factual basis for Wazzan's conclusions rather than mere conjecture. The court grants the motion to exclude Wazzan's testimony as to the second and third topics in his report.

The University also moves to exclude Campbell's expert opinion because it is based entirely on the 2017 budget footnote interpretation that the University could withdraw support from TPI or "claw back" support it had already given to TPI, and the conclusions and projections Wazzan made based on that interpretation. (Doc. 379 at 16.) Plaintiff does not provide any reason why Campbell's testimony can stand independent of Wazzan's testimony that is now excluded by the court. The court thus grants the motion to exclude Campbell's testimony.

### 4. Lakin

The University moves to exclude Phil Lakin Jr.'s expert opinion primarily because the opinion is based on standards outside the Grant Agreement. (Doc. 378 at 8.) Plaintiff opposes exclusion because Lakin's opinion is relevant to its fraudulent inducement and good faith and fair dealing claims. (Doc. 389 at 2–4.) Lakin's report opines that the University's alleged actions violated the Donor Bill of Rights and the International Statement of Ethical Principles in Fundraising. (Doc. 378-1 at 4–7.) Specifically, Lakin states that the following actions, along with

unspecified "misrepresentations and omissions to the donors" violated the Donor Bill of Rights

and the International Statement of Ethical Principles in Fundraising:

> [1.] The University failed to name an Institute Director to perform the functions described in the Grant Agreement, failed to name an Executive Director (consistent with the parties' subsequent agreement that the University would (a) hire a Faculty Director and a separate Executive Director as co-leaders of The Pearson Institute to fulfill the functions described for the Institute Director in the Grant Agreement, and (b) the Executive Director would be someone with the qualifications to oversee the administrative and management responsibilities associated with The Pearson Institute);
>
> [2.] In certain instances, the University failed to hire faculty with the experience and qualifications customary for full professors in endowed named chairs;
>
> [3] The University supplied inaccurate and misleading preliminary and annual operating plan and budgets subsequently thereafter to the donor;
>
> [4] The University failed to develop a new academic curriculum for The Pearson Institute as required by the Grant Agreement;
>
> [5] The University failed to appoint adequate devoted personnel to steward the donors' gift and ensure that the schedule as well as the annual operating plan and budget set forth in the Grant Agreement would be accurately and timely accomplished;
>
> [6] The University failed to provide mutually agreed annual reports and other information, and to meet with the donors, as required under the Grant Agreement;
>
> [7] The University failed to invite the donors to certain events, as required under the Grant Agreement;
>
> [8] The University failed to launch a TPI website on the schedule promised in the Grant Agreement;
>
> [9] The University failed to self-report its breaches to the donors, as it had promised to do in the Grant Agreement[.]

(Doc. 378-1 at 4–7.)  Except for items 2, 3, and 5, it appears the issues identified by Lakin are all

express breach of contract allegations.  Lakin testifies that these alleged express breaches (at least

some of which have been decided on summary judgment) violate the aforementioned donor

standards.  An "[e]xpert opinion on a party's compliance with an industry standard is irrelevant

when its obligations are contractually defined." *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G.*

*Fur Chemische Industrie*, No. 11-CV-681 KBF, 2015 WL 5459662, at *8 (S.D.N.Y. Sept. 16,

2015).  But a plaintiff must show that it "reasonably relied upon" a material misrepresentation to

show fraudulent inducement.  *See Capax Discovery, Inc. v. AEP RSD Invs., LLC*, 285 F. Supp. 3d 579, 586 (W.D.N.Y. 2018).

Here, Plaintiff correctly points out that Lakin's testimony goes to the fraudulent inducement claim (in item three) because Lakin indicates that providing an inaccurate and misleading preliminary budget would violate recognized general donor standards.  This testimony at least goes to the reasonable reliance of Plaintiff in deciding to enter the Grant Agreement.  The fraudulent inducement claim is not governed by the contract, and thus general standards are appropriate.  Lastly, it appears that items two and five are potentially relevant to good faith and fair dealing claims.  There too, it seems an express contract provision does not necessarily control.

But the University further argues that Lakin's opinion testimony should be excluded because his testimony does not address anything besides guidelines outside the contract.  (Doc. 378 at 9.)  But that does not provide a basis for excluding Lakin's testimony regarding the fraudulent inducement claim or good faith and fair dealing claims.  Finally, the University argues that Lakin's opinion violates Rule 26 because it was substantially drafted by counsel.  (*Id.* at 9–11.)

Expert witnesses must generally submit a report that is "prepared and signed by the witness."  Fed. R. Civ. P. 26 (a)(2)(B).  "Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports[.]"  Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment.  "A party's attorney can reduce an expert's oral opinion to writing so long as the report reflects the actual views of the expert."  *United States v. Kalymon*, 541 F.3d 624, 638 (6th Cir. 2008).

Here, deposition testimony indicates Plaintiff's counsel prepared the first draft of Lakin's opinion after conducting an interview with him.  (Doc. 378-2 at 17–18.)  Lakin and counsel went

back and forth editing the report two or three times.  (*Id.* at 19.)  Lakin spent between five and ten

hours drafting his report and approximately ten hours reviewing documents.  (*Id.* at 22–23.)  This

is sufficient preparation under Rule 26.  Cases such as *Mullen v. S. Denver Rehab., LLC*, 18-CV-

01552-MEH, 2020 WL 6680358 (D. Colo. Nov. 12, 2020) do not change this result.  There, the

court allowed expert testimony where counsel drafted the first version of the report after the

witness spent 21 hours reviewing documents, discussed her opinion with counsel for up to one

hour, and reviewed the report for approximately 2.5 hours before signing it.  *Id.* at *1.  The

University zones in on the fact that the expert in *Mullen* spent more time reviewing documents.

(Doc. 378 at 10.)  But the primary deciding factor in *Mullen* was that counsel prepared the report

*after* a conversation with the expert.  *Id.* at *3.  That is the case here. And the hours spent by Lakin

are not as concerning as they appear at first glance because his opinion is relatively limited and

straightforward.  And Lakin spent more time working on his report than the expert in *Mullen*.  The

court declines to exclude the remainder of Lakin's testimony based on a Rule 26 violation.

### 5.  Shepard

Plaintiff seeks to exclude a subset of Paragraphs 12–15, 17–18, 20 and 21, 23–25, and 28–

34 of Dr. Robert Shepard's opinion.  (Doc. 375.)  The University intends to call Shepard as a

rebuttal expert to Lakin.  (Doc. 390 at 4.)  Shepard has over 40 years of experience in higher

education fundraising, and he generally opines that the University acted consistently with general

donor relations principles.  *See* (Doc. 375-1 ¶¶ 1, 11–15, 34.)  Plaintiff provides several specific

arguments for excluding a subset of Shepard's report: (1) Shepard is not qualified to opine on

budgets; (2) Shepard's budgetary opinions are not reliable; and (3) Shepard draws several

conclusions without reference to specialized knowledge.  (Doc. 375 at 2–3.)

In evaluating expert testimony, a court first determines "whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *Schulenberg*, 911 F.3d at 1282 (quotation marks and citation omitted). The court next determines "whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." *Id.* at 1283 (citation omitted). A court may conclude that an opinion is unreliable because the gap between the data and the expert's conclusion is too great. *Id.* (citation omitted). "Permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field." *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) (citation omitted).

Plaintiff first argues that Shepard is not qualified because he repeatedly disclaimed being a budget expert in his deposition testimony. (Doc. 375 at 2.) But, in context, Shepard's testimony is not about budgets per se. Rather, his testimony is about the role of budgets in the context of university donor relations. *See, e.g.*, (Doc. 375-2 at 9 ("This format for sharing budgets with major donors is fairly typical in higher education.")). Given Shepard's extensive experience in managing large donations in higher education, *see* (*id.* at 2 (referencing experience including a $3.8 billion fundraising campaign)), he is qualified to talk about budgets in that regard. The court declines to exclude portions of Shepard's testimony based on qualification.

Plaintiff further argues that Shepard's opinions are not reliable because he stated that the basis for a portion of his report was that he presumed the role of a preliminary budget. (Doc. 375 at 3.) However, while Shepard used the lightning rod word "presume" in his deposition testimony, in context Shepard was merely saying that he believed the preliminary budget set forth how the donation would be used to support the institute based on his review of the record. *See, e.g.*, (Doc. 375-2 at 11 "I don't see how you could look at the budget and come up with any other

explanation.")) Shepard's statements are thus fuel for cross examination rather than for exclusion. The court finds that the expert testimony is not based on improper presumption and declines to exclude portions of Shepard's opinions on that basis.

Finally, Plaintiff argues that Shepard bases some of his testimony on everyday experience rather than specialized knowledge and thus invades the province of the jury. (Doc. 375 at 3–5.) But all the examples Plaintiff speaks to are Shepard's conclusions when viewing the facts as an expert in university fund raising. *See, e.g.*, (Doc. 375-1 at 8 ("[T]he documents I have reviewed suggest that the University—especially through Dr. Diermeier and Nicki Nabasny—maintained an open line of communication with the donors.").) The jury is free to give weight to Shepard's opinion or disregard it. The court declines to exclude Shepard's expert testimony. The court notes that Plaintiff's passing argument that Shepard's opinion is unreliable based on the limited documents he reviewed is not developed or properly before the court. And if anything, this argument would apply equally to Plaintiff's expert Lakin. The motion is denied.

### C.  Motion to Strike Supplemental Authority Brief

Plaintiff moves to strike the University's Submission Regarding Applicable Law. (Doc. 422.) Plaintiff argues that the brief violates the clear instructions of the court from the last pretrial conference. (*Id.* at 1, 4.) The University argues that it was Plaintiff who violated this court's direction by including the donative intent subject-matter in its briefing, and that its additional brief was merely to respond to Plaintiff. (Doc. 423 at 3.)

At the previous pretrial conference, this court directed the parties to submit further briefing on the scope of the preserved claims and the effect of this court's ruling regarding express breaches of contract on any breach of the implied duty of good faith and fair dealing claims. The court also separately requested that the parties send in some authorities on donative intent jurisprudence.

Plaintiff responded to the hearing with a brief addressing the two issues identified by the court and including a five-page list of eight donative intent authorities with short summaries at the end of its brief. While there was no need for Plaintiff to place the donation-related authorities in its formal brief or provide summaries, the court finds that this approach was consistent with the court's request. The University filed a legal brief on the issues requested by the court. But then, inconsistent with the court's request, the University used Plaintiff's caselaw list as justification to file an entirely separate 18-page legal brief on the donative intent issue. The court understands the inclination to get more briefing before the court, but that is not what the court requested on the donative intent aspect of the case. The court will consider the authorities submitted by the University, just as it will consider Plaintiff's authorities. But the court strikes the University's supplemental brief (Doc. 421) from the record.[3]

## IV.    Conclusion

The University's motion for summary judgment on the express breach of contract claim regarding faculty qualifications (Doc. 401) is GRANTED. Plaintiff's motion to file a surreply (Doc. 414) is DENIED. The University's motions to exclude the testimony of Wazzan, Campbell, Lakin, and Shamos (378, 379, 402), are GRANTED IN PART and DENIED IN PART. Campbell's testimony is excluded in its entirety. Wazzan may testify as to whether the operating budget dated April 3, 2015, provided complete and accurate budget information. The rest of his testimony is excluded. Lakin may testify as to how the standards identified in his report apply to

---

[3]   The University argues in passing that there is no basis under the federal rules to strike documents outside the pleadings. (Doc. 423 at 4.) But the court retains the inherent authority to strike improper filings. *See, e.g.*, *Kirven v. Curry Cnty. Det. Ctr.*, 407 F. Supp. 3d 1184, 1185 (D.N.M. 2019) (collecting authorities); *see also Mack v. J.M. Smuckers Co.*, No. 22-3195, 2023 WL 5217705, at *2 (10th Cir. Aug. 15, 2023) (citing *In re Young*, 91 F.3d 1367, 1377 (10th Cir. 1996)) ("We likewise review a district court's grant of a motion to strike a sur-reply for an abuse of discretion."), *cert. denied*, 144 S. Ct. 589 (2024).

the facts underlying Plaintiff's fraudulent inducement claim and any remaining good faith and fair dealing claims.  The rest of his testimony is excluded.  Shamos is excluded from opining on what the express Grant Agreement provisions required, but his testimony is otherwise admissible. Plaintiff's motion to exclude Shepard's and Shapiro's testimony, (Docs. 375, 395), is DENIED. Finally, Plaintiff's motion to strike, (Doc. 422), is GRANTED.

IT IS SO ORDERED.

Dated: June 5, 2024                           /s/John W. Broomes
                                              JOHN W. BROOMES
                                              UNITED STATES DISTRICT JUDGE