IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE THOMAS L. PEARSON AND PEARSON FAMILY FOUNDATION,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>THE UNIVERSITY OF CHICAGO,<br><br>    Defendant and Counterclaim Plaintiff. | Case No. 18-99-JWB |

### MEMORANDUM AND ORDER

This matter is before the court on the parties' proposed pretrial order. This court held a pretrial hearing by phone on December 14, 2023, and it became clear that the parties could not agree what claims and issues are ripe for trial. The court therefore issues the following order to definitively rule on what currently contested aspects of the case will proceed to trial, and it orders the parties to submit an amended proposed pretrial order by June 20 based on the rulings herein.

**I.**     **Background**

The court has set forth the factual background and early procedural history of this case in detail in a prior order. (Doc. 360.) Hence, the court recounts only the background necessary for deciding the disputed pretrial order provisions.

Plaintiff's amended complaint alleged express breaches of contract, breaches of the implied duty of good faith and good dealing, fraudulent inducement, and unilateral mistake. *See* (Doc. 110.) Plaintiff also sought the equitable remedy of recission and punitive damages. *See* (*id.*) The court has granted summary judgment for the University on the following express breach of contract claims:

- the quality of the March 2017 Definitive Operating Plan and Budget,
- the timeliness of the University's faculty appointments,
- the University's appointment of an Institute Director and Executive Director, and
- creating and developing a new academic curriculum.

(*Id.* at 62.) The court also struck from the amended complaint the express breach of contract claim regarding the University's alleged failure to provide an Initial Budget that complied with § 3.1(d) because it exceeded the scope of the leave to amend. (*Id.*) Next, the court granted summary judgment on Plaintiff's claim for unilateral mistake and Plaintiff's request for punitive damages. (*Id.*) The court has also since granted the University summary judgment on Plaintiff's express breach of contract claim regarding faculty qualifications. (Doc. 427.) The court, however, denied the University summary judgment on Plaintiff's fraudulent inducement claim and on Plaintiff's remedy of equitable recission. (*Id.* at 50–53, 56–60.) With this background in mind, the court proceeds to the claims Plaintiff alleges remain in the case.

**II.   Analysis**

The parties contest many claims in the pretrial order. The court analyzes whether the *contested* claims are properly in the case at this stage of litigation. The court will address in more detail how to properly formulate the claims in proposed jury instructions at a future conference.

**A.  Breach of Contract Claims**

The University claims that there are six unpled express breach of contract claims for which Plaintiff cannot establish good cause for failing to allege until now and should thus be removed from the pretrial order. *See* (Doc. 417 at 28.) The disputed claims are at paragraphs 61, 64, 65, 67, 69, and 71. The claims allege that (1) the University breached § 3.1(d) in the Grant Agreement by unilaterally reducing the number of Fellows and/or Scholars; (2) the University overcharged

the Pearson Institute ("TPI") on rent; (3) the University failed to properly report or disclose a ten percent tax or assessment on the Pearson Fund; (4) the University breached its confidentiality obligations, leading to publication of confidential information; (5) the University breached § 3.1(a) of the Grant Agreement by failing to develop a plan for dignitaries and invited visitors to TPI; and (6) the University failed to hire a Grants Administrator and a Communications Manager.  (PPTO ¶¶ 61, 64, 65, 67, 69, 71.)  Plaintiff effectively admits that it has never pleaded these claims, but instead argues that the University should be on notice of these claims because the topics have come up during discovery.  (Doc. 416 at 13–15.)  Alternatively, Plaintiff argues that the court should freely grant leave to amend.  (*Id.* at 9.)

Regarding Plaintiff's argument that it can constructively amend its complaint carte blanche because the University failed to object to some requests for admission or to certain deposition subject-matter is a dubious proposition.  In determining what is relevant for discovery, "a flexible treatment of relevance is required and the making of discovery, whether voluntary or under court order, *is not a concession or determination of relevance for purposes of trial*."  Fed. R. Civ. P. 26(b)(1) advisory committee's note to 1970 amendment (emphasis added).  The standard for discovery is broader than what is admissible at trial.  Touching on a topic in discovery is not automatically akin to formal amendment.  And, more importantly, Plaintiff ignores the fact that ordinarily, formal claim amendment is *required* in the Tenth Circuit.  *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) ("[W]e typically expect plaintiffs to file a formal motion to amend their pleadings if they want to add an entirely new claim to their complaint.")  In *Smith*, the Tenth Circuit affirmed the district court's denial of adding a claim to a pretrial order based on interrogatory responses by the plaintiff over a year prior.  *Id.*  There, the original claim was for compensation for travel to and from a work site, and the new interrogatory-based claim would

have covered alleged uncompensated time at the work site. *See id.* at 1284. Similarly here, the amended complaint alleged certain express breaches of contract, and now Plaintiff is attempting to allege new contractual breaches. The court finds references to potential new issues in discovery did not include new claims in the case.

Which brings the court to Plaintiff's second argument regarding leave to amend—Plaintiff's requested standard is incomplete. The initial scheduling order in this case established a deadline to amend the pleadings on *September 21, 2018*. (Doc. 47.) Because the scheduling order deadline has (long) passed, Plaintiff must also meet the applicable Rule 16 standard—*good cause*—to amend its pleadings via the pretrial order. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014). Plaintiff provides no justification, let alone good cause for these brand new claims to enter the case at this late stage. This case contrasts with cases like *Minter v. Prime Equipment Co.*, 451 F.3d 1196 (10th Cir. 2006), where a defendant's late discovery disclosure justified a plaintiff's attempt to amend his claims three weeks before the trial date. *Id.* at 1206–07. The court thus strikes the aforementioned express breach of contract claims from the proposed pretrial order.

### B. Good Faith and Fair Dealing Claims

Before addressing Plaintiff's specific claims, the court notes at the outset that Plaintiff attempts to lump all its good faith allegations in a single claim. (Doc. 416 at 16.) As Plaintiff puts it in the proposed pretrial order:

> [Plaintiff] bargained for the creation and operation of an institute that would have long-term financial stability and which would be operated by an academic partner who was acting in good faith and in accordance with its own standards and procedures. By engaging in the forgoing actions and inactions in breach of its express obligations and its implied duty of good faith and fair dealing, the University has caused [Plaintiff] to lose these central benefits of the Grant Agreement for which they bargained.

(PPTO at 41.)

Plaintiff, however, provides no caselaw to back up this characterization of its claims in its supplemental briefing. And characterizing a breach of good faith and fair dealing as encompassing express breaches of contract is contradictory. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 206 (2d Cir. 2018) ("A party certainly cannot succeed on claims for both breach of an express contract term and breach of the implied covenant based on the same facts . . . ."). And Plaintiff elsewhere in the proposed pretrial order systematically outlines specific contract provisions where it believes that the University, while not necessarily breaching an express provision, undermined what a reasonable party would have expected to gain from that provision. (PPTO at 6, 9–12.) This approach appears consistent with the University's construction of Plaintiff's claims and with New York law. *See Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1577 (2d Cir. 1994) (holding the district court properly concluded there was a duty to exercise specific contractual promotional obligations in good faith). The court thus rejects Plaintiff's suggested schema that it has a single good faith and fair dealing claim with many facets regarding the entirety of the Grant Agreement and proceeds with analyzing individual good faith and fair dealing claims.

First, the parties contest whether Plaintiff may bring a good faith and fair dealing claim based on the University's purported failure to regularly report on TPI's budgeting and financial condition. The University argues, *inter alia*, that such a claim fails as a matter of law because it would impermissibly undermine express provisions of the contract, which the court previously dealt with at summary judgment. (Doc. 417 at 15, 21.)

"Under New York law, a covenant of good faith and fair dealing is implied in all contracts." *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 455 (S.D.N.Y. 2021) (quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 170 (2d Cir. 2004)). But

"[n]o obligation can be implied . . . which would be inconsistent with other terms of the agreement of the parties." *Id.* (alteration original) (citation omitted). "Absent a connection to an express or presumed contractual right or obligation, the doctrine [of good faith and fair dealing] 'does not import a generalized code of good conduct into the law of contracts.'" *Id.* at 456 (citation omitted). For example, "[w]here a contract allows a bank to withhold consent for particular conduct and sets no express restrictions on the bank's right to do so, the bank is not prohibited from unreasonably or arbitrarily withholding such consent." *State St. Bank & Tr. Co.*, 374 F.3d at 170.

Here, Plaintiff is clearly attempting to resurrect an express breach of contract claim that it lost at the summary judgment phase as a good faith and fair dealing claim. Plaintiff is again asserting in the proposed pretrial order that the Initial Budget did not list outside funding sources, that the first time Plaintiff learned the endowment was insufficient to cover all TPI and Pearson Forum expenses was when it received the Definitive Budget in 2017, and that it had a reasonable expectation that it would be appraised of all budgetary sources. *See* (PPTO ¶¶ 15–31.) Moreover, Plaintiff continues to allege that the University committed some grave breach of the parties' relationship with the much-ballyhooed budgetary footnote, which stated that Harris School contributions to TPI and the Pearson Forum were subject to reevaluation. (*Id.* ¶ 22.)

The court previously held that the express terms of the contract clearly did not require the preliminary budget to contain information about other funding sources for TPI and the Pearson Forum when it denied Plaintiff summary judgment, and, more importantly, struck the claim based on the preliminary budget requirements in § 3.1(d) of the Grant Agreement as exceeding the scope of leave to amend. (Doc. 360 at 22–32.) The court also granted the University summary judgment on the express breach of contract claim regarding the Definitive Budget's reevaluation footnote. (*Id.* at 33.) The court based its holdings on express contract provisions and uncontroverted facts.

(*Id.* at 23 ("And here, the only logical reading of the Grant Agreement as a whole is that § 3.1(d) merely required the Initial Budget to reflect how Plaintiffs' endowment was being used."), 34 ("[Plaintiff] cite[s] no evidence to support its allegations that the [Definitive Budget] contained material errors, failed to meet standards of quality or professionalism, or otherwise was unfit for its intended use.").) Plaintiff fails to show that it has been deprived of an implied benefit of the bargain regarding the budgetary process. Plaintiff is rather seeking to imply a benefit to the Grant Agreement inconsistent with the terms of the agreement. Moreover, any minor attempt to allege additional facts at this stage of litigation in a half-hearted effort to differentiate the good faith claim from the express breach claim, after the court granted summary judgment, is merely inappropriately trying to amend claims after a scheduling deadline without good cause. *See Gorsuch, Ltd.*, 771 F.3d at 1241. ("[P]arties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so."). The court therefore holds that Plaintiff has no ground to assert a good faith and fair dealing claim based on the Initial Budget, the Definitive Budget, or the financial reporting by the University regarding the budgetary process.

Second, the University argues that Plaintiff cannot have a good faith and fair dealing claim based on the University's alleged failure to provide necessary leadership by failing to hire an Executive Director and hiring James Robinson as an unqualified Institute Director. (Doc. 417 at 22.) The University argues, *inter alia*, that such a claim is inconsistent with this court's interpretation of express contract provisions, and a duty of good faith cannot be implied where it would contradict an express contract provision. (*Id.* at 24.) The court agrees with the University. The court held at summary judgment that the University (1) had hired a qualified Institute Director, and (2) that the University was not required to hire an Executive Director under the express terms of the fully integrated contract. (Doc. 360 at 44–48.) To hold that Plaintiff could recover under a good faith theory would contradict the court's interpretation of the contract's express terms, for

instance, that the University fulfilled its obligation to appoint an Institute Director who was a prominent faculty member with an established record of published scholarship demonstrating his commitment to issues relevant to TPI's work. (*Id.* at 45 (citing (Doc. 6 § 3.2(a)))). Similarly holding that good faith required the University to appoint an Executive Director would also be contradictory to the clear terms of the contract, which provide many details about leadership appointment but do not require appointment of an Executive Director. Plaintiff thus cannot assert a good faith claim based on the Institute Director and Executive Director issues at trial.

Third, Plaintiff argues that it can base a good faith and fair dealing claim (at least in part) on the University's failure to develop a unique curriculum for TPI. (Doc. 416 at 18–19.) The court granted summary judgment for the University on Plaintiff's express breach of contract claim based on essentially the same operative facts as the current curriculum assertions because "the Grant Agreement is not ambiguous. The operative terms of the contract merely require the University to offer a certain number of classes 'relating to the study of global conflict and its resolution' by the dates set forth in the Initial Operating Plan." (Doc. 360 at 50 (citing (Doc. 6 § 3.1(a), Ex. C-1–C-5).) Thus, to hold that a duty of good faith required the University to develop an entirely new curriculum for TPI is inconsistent with the express terms governing the courses offered by the University through TPI. The court holds Plaintiff cannot assert a good faith and fair dealing claim based off its desire for a unique curriculum at trial. Plaintiff also lists a failure to have chaired faculty each teach two to four courses a year in the PPTO as a breach of the duty of good faith and fair dealing. (PPTO ¶¶42–44.) This good faith claim was never pled, and Plaintiff has not established good cause to assert such a claim. *Gorsuch, Ltd.*, 771 F.3d at 1241.

Next, the parties dispute whether Plaintiff can properly allege a breach of the duty of good faith and fair dealing regarding the University's faculty chairs selection process. The court analyzed this claim in detail in its summary judgment order. (Doc. 427 at 6, 8–9.) For the reasons

discussed in that order, the court finds that Plaintiff properly alleged, and that the University failed to seek summary judgment on, this claim. A good faith and fair dealing claim based on the faculty selection process is sufficiently distinct from the faculty quality claim for which the court granted summary judgment and will thus be preserved in the pretrial order.

Finally, Plaintiff seeks to hold the University accountable on a good faith and fair dealing theory based on what it describes as an alleged pattern of concealment. (PPTO ¶¶ 50–60.) The University argues that the claims in paragraphs 54, 57, and 59 are not pled in the amended complaint. (Doc. 417 at 27–28.) These allegations include (1) that the University unilaterally changed TPI's mission statement, (2) that the University deleted an employee biography off a website, and (3) that the University failed to inform Plaintiff that TPI office space was being used by individuals unassociated with TPI. (PPTO ¶¶ 54, 57, 59.) The University is correct. These allegations are not factual support for a previously alleged claim, they are *new claims*. *See* (Doc. 110 (failing to allege any claim related to changing a mission statement, deleting website information, or using TPI offices for non-TPI employees).) And Plaintiff fails to even attempt to establish good cause to amend its pleadings after the scheduling order deadline has long passed. *See Gorsuch, Ltd.*, 771 F.3d at 1241. To show good cause, Plaintiff needed to show that scheduling deadlines could not be met despite its diligent efforts. *Id.* at 240. The court thus strikes these claims from the proposed pretrial order.

### C. Other Issues Remaining

Based on this court's prior rulings, the court makes the following notations for the benefit of the record. Plaintiff may assert at trial its claim for fraudulent inducement based on its allegation that it was induced to enter the Grant Agreement based on the University's failure to disclose the total operating costs of TPI and the Pearson Forum. (Doc. 360 at 52.) Plaintiff has also preserved

its request for the equitable remedy of recission. (Doc. 360 at 60.) Therefore, this claim and accompanying remedy will also be included in the pretrial order. The court also notes that it is undisputed that the University has a counterclaim for a breach of the Grant Agreement, and that Plaintiff has not objected to the University's request to amend its counterclaim in the pretrial order.

**III.    Conclusion**

The court therefore orders the parties to provide to the court, via email to the chambers email address, an amended proposed pretrial order consistent with the above rulings by June 20. The court also imposes the following rules. The parties' factual background sections are limited to five pages each, in total. The amended proposed pretrial order should be no more than 25 pages total.

IT IS SO ORDERED.

Dated: June 6, 2024                              /s/John W. Broomes
                                                 JOHN W. BROOMES
                                                 UNITED STATES DISTRICT JUDGE